330 So.2d 173 (1976)
Johnnie Mae CRAPPS, Petitioner,
v.
Paul MURCHEK, Director, Parole and Probation Commission, State of Florida, Respondent.
No. 75-1180.
District Court of Appeal of Florida, Fourth District.
April 2, 1976.
Rehearing Denied May 5, 1976.
Richard L. Jorandby, Public Defender, and David B. Linn, Sp. Asst. Public Defender, West Palm Beach, for petitioner.
Robert L. Shevin, Atty. Gen., Tallahassee, and Basil S. Diamond, Asst. Atty. Gen., and Paul G. Saunders, III, Legal Intern, David H. Bludworth, State's Atty., West Palm Beach, for respondent.
OWEN, Judge.
Through no fault of the trial judge, a failure in communications between the court and the jury in the matter of the jury instructions has led to a result which we perceive to be a substantial miscarriage of justice and which we here rectify by granting petitioner a new trial.
*174 Petitioner, convicted of manslaughter, has been granted delayed appellate review by writ of habeas corpus. She was charged with second-degree murder in the stabbing death of one Willie Gordon. There was substantial (if not overwhelming) evidence to sustain petitioner's defense of justifiable homicide, i.e., self-defense. The jury was instructed on the applicable degrees of homicide and all lesser included offenses including attempts, and given appropriate verdict forms as to each offense, together with a verdict form for not guilty. After the jury had deliberated for some time, it asked for and received reinstruction on the elements of the various offenses. After further deliberation the jury sent word by the bailiff that it had reached a decision but did not know "how to title it." Thereupon, the following proceedings transpired:
"THE COURT: All I can give you is the information I have. That is that the jury knocked on the door and advised the Bailiff they have reached a decision but don't know how to title it. I'll call the jury in and ask them if they have got a question for the Court.
That's all I can do.
Bring the jury in, please.
(Jury returned to the jury box.)
THE COURT: Ladies and gentlemen of the jury, do you have a question for the Court?
THE FOREMAN: Yes, we have all reached a unanimous decision but we don't know what category it goes under. You named some off that we haven't got some slips for. I have it written out, if it would help.
THE COURT: Hand the verdict to me, please. Ladies and gentlemen of the jury, there is a form of verdict for every offense that I read to you including a not guilty form in here.
THE FOREMAN: There is one or two of us that do not agree that it comes under one category. We all reached a unanimous verdict but it is a question of what category that goes under. There is one or two that don't agree it goes under the category the rest of us do.
THE COURT: Then I can only advise you that you have not reached a unanimous decision. By reaching a unanimous decision, it means all six jurors have agreed on one of those verdict forms.
THE FOREMAN: May we have a breakdown of one read to us again? Manslaughter, would you read that one for us?
THE COURT: To explain to you the offense of manslaughter, I must explain to you justifiable homicide and excusable homicide. The killing of a human being by any person is justifiable homicide and lawful when committed in resisting an attempt to commit murder.
THE FOREMAN: Excuse me, Judge. You have already answered our question.

THE COURT: Does that answer your question?
THE FOREMAN: Can we have the slips back?
THE COURT: Return to the jury room to continue your deliberations. Mr. Bailiff, hand the jurors the forms of verdicts.
(Jury returned to the jury room.)
THE COURT: I will ask counsel if there is any objection to the answer the Court gave to the jury's inquiry.
MR. BROWN [prosecutor]: Do I have any objection? No.
MR. BRATTEN [defense counsel]: Your Honor, I am utterly confused. I don't feel I have enough information to make an objection or approve of what happened. Obviously, you did *175 what the jury wanted. I am beyond comprehension at this point.
MR. BROWN: I didn't say I quite understood it. I just said I had no objection." (emphasis added)
Here we see one of the ironies of the law. The trial court, being aware of the teaching of Hedges v. State, 172 So.2d 824 (Fla. 1965), realized that in order to properly reinstruct the jury on manslaughter, it would be necessary to also reinstruct on justifiable and excusable homicide. However, as events later proved, this proper effort on the part of the trial judge, untimely aborted as it was by the jury foreman's interruption,[1] is that which led to the failure of communication and the miscarriage of justice.
The jury returned to the jury box a short time later and announced a verdict of manslaughter. The following day a deputy clerk reported to the trial court that a juror had advised that a mistake had been made in the verdict. The court advised counsel. Pursuant to the Code of Professional Responsibility, defense counsel gave the appropriate notice and took a deposition from the juror. She testified that the unanimous verdict agreed upon in the jury room was "guilty of justifiable homicide," but that since none of the verdict forms mentioned "justifiable homicide," the jury made the inquiry of the court heretofore described. This juror also further testified as follows:
"Q. Okay. And it was your understanding that the justifiable category and the manslaughter category was the same?
A. One and the same, that's what I thought. That I know that manslaughter, the Judge listed two or three items under manslaughter. And when he said justifiable homicide, that should have been included under manslaughter, under that category.
Q. When you asked for the definition of manslaughter, the first thing he said was to give you the definition of manslaughter I also have to give you the definition of excusable and justifiable homicide. That was when you came out, back out and asked 
A. Yes.
Q. And he started to read the definition of justifiable homicide.
A. Whatever it is.
Q. And half way through your jury foreman said we have heard enough.
A. Yes.
Q. It was your impression 
A. I feel we should have listened to all of it.
Q. Okay. Well, it was your impression then from the fact that he read justifiable in connection with manslaughter that the two were one and the same; is that correct?
A. That's right."
(Deposition of Demko, pages 16-17).
The trial court, in considering defendant's motion for new trial conscientiously considered the sworn testimony of this juror, but concluded that the court was bound, under the authority of State v. Ramirez, 73 So.2d 218 (Fla. 1954) and Marks v. State Road Department, 69 So.2d 771 (Fla. 1954) to view such testimony as an impermissible attempt to impeach the jury verdict by matters which essentially inhere in the verdict itself.
*176 We think that the unique situation presented by this case is one which presents an exception to the rule announced in the Ramirez and Marks cases. There is much more here than a single juror attempting a postverdict impeachment of the verdict. Her testimony is fully corroborated by the preverdict proceedings showing the confusion of the jury. The warning flags went up when the jury foreman reported that the jury had reached a unanimous verdict but that it did not "fit" any of the verdict forms. Assuming that the unanimous verdict to which he referred was "guilty of justifiable homicide," the proper verdict would have been "not guilty," a fact the jurors apparently had failed to comprehend.
Although the trial judge asked that the verdict form be handed to him [to examine], it is evident that he examined only the forms of verdict originally given to the jury, and did not examine the jury's written verdict which the foreman offered, for had he done so he would certainly have been duty bound to inform them of the significance of their decision.
While the jury was unanimous in its finding of justifiable homicide, its lack of unanimity dealt only with the proper verdict form into which justifiable homicide would "fit." We think it obvious that some jurors thought it "fit" manslaughter and some thought it "fit" not guilty. So it was, that when the trial judge stated that in order for him to explain the offense of manslaughter he must also explain justifiable homicide, the jury precipitously jumped to the erroneous conclusion that a finding of justifiable homicide was synonymous with a verdict of manslaughter.
Despite the best efforts of the bench and bar of this state, jury instructions have been difficult to formulate in language which is both readily understandable by the layman and technically sufficient to encompass all of the requirements of law. At the present time an extensive study is being conducted, headed by Circuit Judge David Strawn, to find methods of better communication between the court and jurors on the matter of jury instructions. Hopefully such study will in time be sufficiently productive so as to eliminate the type of confusion and obvious miscarriage of justice as resulted in this case.
The interests of justice will be best served in this case by reversing the judgment and remanding this cause for a new trial. It is so ordered.
REVERSED and REMANDED.
CROSS and MAGER, JJ., concur.
NOTES
[1] The trial court's failure to complete the instruction, though at the request of the jury, was nonetheless error, Jackson v. State, 317 So.2d 454 (4th DCA Fla. 1975), but not the basis for reversal in this case in view of the lack of objection to such omission.