348 So.2d 599 (1977)
William C. BARNES, Appellant,
v.
STATE of Florida, Appellee.
No. 76-11.
District Court of Appeal of Florida, Fourth District.
July 1, 1977.
Richard L. Jorandby, Public Defender, Tatjana Ostapoff, Asst. Public Defender and Frank B. Kessler, Chief, Appellate Div., West Palm Beach, for appellant.
Robert L. Shevin, Atty. Gen., Tallahassee, and Richard P. Zaretsky, Asst. Atty. Gen., West Palm Beach, for appellee.
DAUKSCH, Judge.
Appellant was charged with Murder II and convicted of manslaughter. It is from that conviction he appeals.
Appellant and deceased were observed each holding sticks and Appellant was seen to hit deceased with a stick and kick the deceased in the head. The cause of death was a brain hemorrhage. After striking the deceased the Appellant left the scene and went home and was later contacted by police and arrested. His defense was self defense which, if successfully maintained, constitutes justifiable homicide. Section 782.02, Florida Statutes (1975).
The error complained of is in three occurrences at trial. We shall deal with them separately and point out that in the cases cited each type of error has been held to be reversible in and of itself. However, in this case it is the three taken together which cause us to reverse.
POINT I. The court gave the following instruction to the jury:
"We will move now to the lesser included offense of manslaughter.

*600 Manslaughter is the killing of a human being by an act, procurement or culpible (sic) negligence of another in cases where such killing shall not be justifiable or excusable homicide or murder.
At this point, as far as the definition of manslaughter, we have to tell you what justifiable and excusable homicide is. This is what justifiable homicide is.
The killing of a human being by any person is justifiable homicide and lawful when committed in resisting an attempt to murder such person, or to commit any felony upon him or upon or any dwelling house in which this person shall be: two, when committed in the lawful defense of such person or his or her husband, wife, parent, grandparent, mother-in-law, father-in-law, child, grandchild, sister, brother, aunt, uncle, niece, nephew, guardian, or when there shall be reasonable grounds to apprehend a design and to commit a felony, or do some great personal injury and there shall be imminent danger of such design being accomplished; and when necessarily committed in attempting by lawful ways and means to apprehend any person for any felony committed, or in lawfully suppressing a riot, or lawfully keeping and preserving the peace.
A homicide committed in self defense that is in the defense of the life of the accused or to protect his person from imminent danger of death or great bodily harm is a justifiable homicide and lawful.
Remember, that's your definition of justifiable homicide, which is part of the definition of manslaughter." (Emphasis supplied.)
After the jury retired for the consideration of its verdict it came back and requested reinstruction on the degrees of homicide and the court recharged the jury and added
"Manslaughter is, if the killing was committed by an act, procurement or culpible (sic) negligence of the defendant and was not guilty of murder in any degree or excusable or justifiable homicide, the defendant should be found guilty of manslaughter; . .."
The jury again retired to consider its verdict and again returned with a question which question was summarized by the trial judge as follows:
"THE COURT: For the record, as counsel, you are aware, the jury has conveyed to Mr. Louis, our bailiff, and he has conveyed to me, and I have conveyed to you, that they have some questions as to whether they could write something on one of their verdict forms that was not there in regard to possibly justifiable or excusable homicide."
The foreman stated the question and the court responded as follows:
"THE FOREMAN: It is not the form itself. It's just to a particular charge, if there are different degrees to the one charge, and the verdict only has the main charge.
How do we know that you are going to know the charge we want and whether it's a lesser degree of one charge?
THE COURT: You are to sign, as foreman, one of those possible verdict forms, depending upon what your verdict  your unanimous verdict is.
If it's second degree, you sign that one; third degree; manslaughter; aggravated assault; or not guilty.
I told you this before, that if no crime has been proved by the State of Florida beyond and to the exclusion of every reasonable doubt, then you sign not guilty.
I don't know if that's your question, but you, as the foreman, are to sign one of those possible verdict forms, depending on what your unanimous verdict is.
THE FOREMAN: I understand that.
There was a little discrepancy.
THE COURT: There was some confusion about that?
THE FOREMAN: Yes.
THE COURT: You mean that you sign more than one verdict form?
THE FOREMAN: No, not that it was just that, but we weren't sure on one particular verdict. There seemed to be like a degree of that same verdict, but it must have been a misunderstanding.
THE COURT: Well, as I said again, the possible verdicts are, as you know, guilty of second degree murder, guilty of third degree murder, guilty of manslaughter, or guilty of aggravated assault, or not guilty.
The jury says, `We, the jury, find the defendant not guilty of second degree *601 murder', if it's not guilty, and that's your verdict. That's the one you sign.
THE FOREMAN: Well, do I give an oral verdict?
THE COURT: No. We just wanted to have that clarified so you are right on the form of verdict.
THE FOREMAN: Yes, sir.
THE COURT: Well, go right ahead back there and make sure that your verdict and sign whatever you find is a unanimous verdict. We will be here, regardless of how long it takes.
THE FOREMAN: Okay.
THE COURT: You may retire, or return to the jury room.
(Whereupon, the jury left the court room to deliberate their verdict, and the following proceedings were had before the Court out of the presence of the jury.)
THE COURT: It was apparent to me that they misunderstood something about the lesser included offenses, that maybe we didn't mention. I am not sure."
The jury then returned with a verdict of guilty of manslaughter. It is unclear from the record as shown but reasonable to assume that the jury's confusion may have been centered around whether or not justifiable homicide was included within the definition of manslaughter. In this instance the Appellant should be given the benefit of the doubt. See Crapps v. Murchek, 330 So.2d 173 (Fla. 4th DCA 1976).
POINT II. The widow of the deceased was brought to trial for the purpose of identifying her late husband as the deceased. See Scott v. State, 256 So.2d 19 (Fla. 4th DCA 1971) and the cases cited therein. In Scott it was said "... a member of the deceased victim's family may not testify for the purpose of identifying the victim where non-related witnesses are available to make such identification." The reason is clearly that criminal trials are meant to be tried as coolly and as dispassionately as possible and to present a close relative of the deceased should be avoided to prevent the interjection of sympathy for the victim or undue prejudice against the accused. In this case sub judice the widow was not the only person available to testify concerning the identity of the deceased and her testimony was not necessary for any other relevant purpose. Additionally she was permitted to testify that she and the deceased were only married for less than a year, he was only 21 years old and he was buried in Clermont; all with the probable intent of seeking sympathy for her and the deceased to the prejudice of the Appellant.
POINT III. The court, over objection, gave the following instruction:
"The Court further instructs you that any evidence tending to show that the defendant fled or attempted to flee from the scene of the alleged crime, if proven to your satisfaction, should be considered by you in connection with all of the evidence in the case as a circumstance from which guilt of the defendant may be inferred."
The evidence was that the Appellant left the deceased on the ground and walked home. Later the Appellant was informed the police were looking for him and he refused to leave because he said he acted in self defense. It also appears the deceased had few outward signs he was fatally injured at the time Appellant left him. There was no evidence the Appellant fled the scene or hid himself or did anything indicating he intended to avoid detection. See Williams v. State, 268 So.2d 566 (Fla.3d DCA 1972).
REVERSED and REMANDED for new trial.
CROSS and LETTS, JJ., concur.