452 So.2d 540 (1984)
Don Andrew BRACKIN, et al., Petitioners,
v.
George William BOLES, et ux., Respondents.
No. 61978.
Supreme Court of Florida.
June 14, 1984.
Rehearing Denied July 25, 1984.
*541 Donald H. Partington and W. Christopher Hart of Clark, Partington, Hart, Hart & Johnson, Pensacola, for petitioners.
W.H.F. Wiltshire and James M. Wilson of Harrell, Wiltshire, Stone and Swearingen, Pensacola, for respondents.
*542 OVERTON, Justice.
This is a petition to review a decision of the First District Court of Appeal reported as Boles v. Brackin, 411 So.2d 280 (Fla. 1st DCA 1982), which directly and expressly conflicts with several decisions of the Third District Court of Appeal, Corbett v. Seaboard Coastline Railroad, 375 So.2d 34 (Fla. 3d DCA 1979), review denied, 383 So.2d 1202 (Fla. 1980); Dorsett v. Dion, 347 So.2d 826 (Fla. 3d DCA 1977); and Goldner v. Lentin, 96 So.2d 553 (Fla. 3d DCA 1957). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const.
This cause concerns the admissibility, in a civil trial, of the results of a blood alcohol test and a violation of the driver's license law. We hold that the results of a blood alcohol test are admissible in a civil trial regardless of whether the test was made for purposes of an accident report investigation or a criminal investigation. Consequently, we recede from our decisions in State v. Mitchell, 245 So.2d 618 (Fla. 1971), and State v. Coffey, 212 So.2d 632 (Fla. 1968). We also hold that a violation of the driver's license law is admissible if relevant to the issues in a cause, although under the facts of this case such a violation was not admissible.
This case commenced as a personal injury action arising from an automobile accident. Respondent Boles, the driver of one car, sued Brackin, the driver of the other car. At the trial Boles testified that he stopped at a three-way intersection. He saw headlights approaching from both directions, but judged that he had enough time to make a left turn and proceed down the highway. As he proceeded through the intersection, the car on his left, driven by Brackin, rammed him broadside. Boles received severe injuries.
The defense called as a witness the highway patrol officer who had investigated the accident. During the proffer of the officer's testimony the officer said that he asked a lab technician for a sample of Boles' blood. A chemist proffered that the blood alcohol content of the sample was .083 per cent. The trial court ruled that this evidence was inadmissible under section 316.066, Florida Statutes (1981). During Brackin's cross-examination, Boles attempted to submit evidence that Brackin had been ticketed and fined for violating a restriction on his driver's license. At the time of the accident Brackin was driving alone although his restricted license required that he be accompanied at all times by a licensed driver who was not less than eighteen years of age and who was actually occupying the front seat of the vehicle. See § 322.16, Fla. Stat. (1981). The trial court found this evidence to be irrelevant and ruled it inadmissible.
The jury returned a verdict finding that Brackin was not negligent. Boles appealed to the First District Court of Appeal, arguing that the trial court erred in not allowing him to submit evidence of Brackin's violation of the driver's license law. Brackin filed a cross-appeal, arguing that the trial court erred in not allowing him to introduce into evidence testimony concerning Boles' blood alcohol content. The district court ruled in Boles' favor on both issues, finding that Brackin's violation of the driver's license law should have been admitted but that evidence of Boles' blood alcohol content was properly excluded. We disagree.
With respect to the admissibility of Boles' blood alcohol content, both the trial court and the district court of appeal concluded that this evidence was inadmissible under section 316.066, Florida Statutes (1981), because the chemical analysis of Boles' blood was performed for the purpose of completing an accident report. Although the conclusion reached by the trial court and the district court is consistent with our decisions in State v. Mitchell, 245 So.2d 618 (Fla. 1971), and State v. Coffey, 212 So.2d 632 (Fla. 1968), we now find that we should recede from those decisions to the extent that they prohibit the admissibility of the results of the blood alcohol test in this case.
There is no federal or state constitutional prohibition against the admissibility *543 of this type of blood alcohol test in either civil or criminal proceedings. The law is clear that the taking of a blood sample is not a violation of the fourth amendment; nor is it a communication which violates the fifth amendment. In Breithaupt v. Abram, 352 U.S. 432, 77 S.Ct. 408, 1 L.Ed.2d 448 (1957), the United States Supreme Court held that the taking of a blood sample from an unconscious automobile accident victim, who was later charged with involuntary manslaughter, did not violate the due process clause of the fourteenth amendment. In Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), the Court held that the taking of a blood sample for chemical testing from a defendant without his consent, where there was probable cause for the officer to believe that the defendant was under the influence of intoxicating liquor, did not violate the defendant's constitutional rights. Most recently, in South Dakota v. Neville, 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983), the Court went a step further and held that refusal to submit to a blood alcohol test may be used against a defendant at trial. Such use, the Court held, does not violate either the fifth amendment privilege against self-incrimination or the due process clause of the fourteenth amendment even though a defendant is not warned that his refusal to submit could be used against him.
This Court has followed these United States Supreme Court decisions and has held that there is no state constitutional prohibition against the admissibility of blood tests taken without the consent of the subject party. Filmon v. State, 336 So.2d 586 (Fla. 1976), cert. denied, 430 U.S. 980, 97 S.Ct. 1675, 52 L.Ed.2d 375 (1977).
This Court has also determined that blood alcohol tests are admissible when an accident investigation can be separated into an accident report phase and a criminal investigation phase. In Coffey and in Filmon this Court held a blood alcohol test admissible when the evidence reflected that the accident report phase of the investigation had ended and the blood test was taken as a result of the criminal investigation of the incident. This so-called distinction between an accident report investigation and a criminal investigation is based on a construction of section 316.066, Florida Statutes (1981), which provides:
316.066 Written reports of accidents. 
(1) The driver of a vehicle which is in any manner involved in an accident resulting in bodily injury to or death of any person or total damage to all property to an apparent extent of $100 or more shall, within 5 days after the accident, forward a written report of such accident to the department. However, when the investigating officer has made a written report of the accident, no written report need be forwarded to the department by the driver.
(2) The department may require any driver of a vehicle involved in an accident of which written report must be made as provided in this section to file supplemental written reports whenever the original report is insufficient in the opinion of the department, and may require witnesses of accidents to render reports to the department.
(3)(a) Every law enforcement officer who in the regular course of duty investigates a motor vehicle accident in which damage to property exceeds the amount of $100, or in which bodily injury or death occurs, either at the time of and at the scene of the accident, or thereafter by interviewing participants or witnesses, shall, within 24 hours after completing the investigation, forward a written report of the accident to the department.
(b) In the case of a county which has a central traffic records system for the purpose of tabulating and analyzing countywide traffic accident reports, the law enforcement agency shall submit a copy of the written report of the accident within the time limit prescribed in paragraph (a) to the central traffic records section of such county.
(4) All accident reports made by persons involved in accidents shall be without prejudice to the individual so *544 reporting and shall be for the confidential use of the department or other state agencies having use of the records for accident prevention purposes, except that the department may disclose the identity of a person involved in an accident when such identity is not otherwise known or when such person denies his presence at such accident, and except that the department shall disclose the final judicial disposition of the case indicating which if any of the parties were found guilty. No such report shall be used as evidence in any trial, civil or criminal, arising out of an accident, except that the department shall furnish upon demand of any person who has, or claims to have, made such a report or upon demand of any court a certificate showing that a specified accident report has or has not been made to the department solely to prove a compliance or a failure to comply with the requirements that such a report be made to the department.
(Emphasis added.) Subparagraph (4) is the critical portion of that statute. This subparagraph provides that "accident reports made by persons involved in accidents shall be without prejudice to the individual so reporting" and that "[n]o such report shall be used as evidence in any trial." We now see no need for a distinction between the accident report investigation and the criminal investigation except as it pertains to a defendant's individual communications to a police officer or in a report submitted by a defendant in accordance with the statute. Such communications are required by subparagraphs (1) and (2), under which a driver involved in an accident must file a written report and supplements thereto.
A blood test is not a communication from "a person involved in an accident." The tangible evidence of the accident, i.e., location of accident, vehicles' locations, skidmarks, damage to vehicles, all observed by the investigating officer, are not confidential and may be admitted into evidence by the investigating police officer. All this information ordinarily appears on the accident report prepared by the investigating police officer and it is clearly admissible at trial. Further, other tangible evidence obtained or observed by the investigating officer is not derived from an "accident report made by persons involved in an accident." Neither is a blood test.
There is no justification or logical reason for holding as privileged the results of a blood alcohol test directed by an investigating officer who prepared an accident report. The statute only prohibits the use of communications "made by persons involved in accidents" in order to avoid a fifth amendment violation. The distinction this Court has previously made between investigations for accident report purposes and investigations for purposes of making criminal charges is artificial, is not a proper interpretation of the statute, and must be eliminated. We clearly and emphatically hold that the purpose of the statute is to clothe with statutory immunity only such statements and communications as the driver, owner, or occupant of a vehicle is compelled to make in order to comply with his or her statutory duty under section 316.066(1) and (2). Accordingly, we hold that the blood alcohol test is admissible in the instant case.
With regard to the admissibility of evidence which would establish that Brackin operated a car in violation of a restriction on his license, the trial court relied upon a line of cases from the Third District Court of Appeal which hold that a violation of a license restriction is not admissible unless there is a causal connection between that violation and the injuries incurred. Corbett v. Seaboard Coastline Railroad, 375 So.2d 34 (Fla. 3d DCA 1979), review denied, 383 So.2d 1202 (Fla. 1980); Dorsett v. Dion, 347 So.2d 826 (Fla. 3d DCA 1977); Goldner v. Lentin, 96 So.2d 553 (Fla. 3d DCA 1957). The district court in the instant case found that the causation predicate established by these cases directly conflicts with our decision in deJesus v. Seaboard Coast Line Railroad, 281 So.2d 198 (Fla. 1973). The district court noted that deJesus established three categories of *545 statutory violations. The first category creates strict liability or conclusively actionable negligence, the second category comprises violations which provide proof of negligence, and the third category consists of violations which provide evidence of negligence. We stated that this third category included violations of traffic regulations, but that "proximate cause and other elements of actionable negligence must be proven independently." Id. at 201. The district court below interpreted this language to mean that causality has nothing to do with the admissibility of a person's violating section 322.16.
This interpretation is incorrect. The language in deJesus that a violation of a traffic regulation is evidence of negligence was not meant to be an exception to the general rule that for evidence to be admissible, it must be relevant. See § 90.402, Fla. Stat. (1981). Evidence is relevant if it tends to prove or disprove a material fact at issue. Hence a person's violating a traffic regulation is admissible evidence only if it tends to prove that that person has negligently operated an automobile. Relevancy is usually inherently established when the traffic regulation which was violated concerns the manner in which an automobile was operated. Relevancy is not so easily established when the traffic regulation which was violated concerns a licensing requirement.
The vast majority of jurisdictions hold that a violation of a driver's license law is not evidence of negligence in the absence of some causal connection between the violation and the injury. See Annot., 29 A.L.R.2d 963 (1953 & Supp. 1981). This requirement of a causal connection for evidence of a violation to be admissible should not be confused with the proximate cause element of a tort action for negligence. The first is a determination of law made by a trial judge in deciding whether a person's violating a driver's license regulation is relevant. Whether such a violation is a proximate cause of any damage or injuries is a finding of fact to be made by the jury.
Thus the real issue in this case is whether the trial judge erred in deciding as a matter of law that Brackin's violating the restriction on his license was not relevant to the manner in which he was operating the automobile. In some situations the violation of such a restriction may be relevant to show the driver's inexperience and incompetence in handling an automobile. See Dorsett v. Dion. In this case, however, Brackin's experience and competence were not placed in issue. Moreover, the accident took place only a few days before Brackin's seventeenth birthday and he had been driving for almost two years. Boles' case did not rest upon Brackin's inexperience, but rather upon the allegation that Brackin was exceeding the speed limit. We therefore find that the trial court was correct in ruling that Brackin's violation of section 322.16 was not relevant and therefore was inadmissible.
We quash the decision of the district court and remand for proceedings in accordance with our decision.
It is so ordered.
ALDERMAN, C.J., and BOYD, McDONALD and EHRLICH, JJ., concur.
ADKINS, J., dissents.