587 So.2d 1148 (1991)
Eric C. NORSTROM, Appellant,
v.
STATE of Florida, Appellee.
No. 89-1966.
District Court of Appeal of Florida, Fourth District.
August 7, 1991.
*1149 Michael Salnick of Salnick & Krischer, West Palm Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Joan Fowler, Asst. Atty. Gen., West Palm Beach, for appellee.
STONE, Judge.
We reverse appellant's conviction on counts of vehicular homicide, culpable negligence and reckless driving, and remand for a new trial. According to a statement made by the 16-year-old defendant, on the night of March 25, 1988, he drove to a party attended by fellow high school students. He drank about four eight-ounce cups of beer while there. After the party, the students gathered at the end of High Ridge Road, parking their cars along the side of the road and standing around near them and in the road at the end of the dead-end street. There were no street lights in the area.
Sometime before midnight, appellant left the High Ridge Road party to take a friend home. He then headed back to pick up another friend. He had difficulty finding the party again. He drove down the street at what he estimated to be seventy to seventy-five miles per hour. By the time he saw the people at the end of the street, it was too late to stop. He slammed on the brakes and lost control of his car. The car struck seven persons, killing one and seriously injuring two others. Several cars were also struck.
Following the accident, appellant told his friend to find a police officer. The friend found Officer Oliphant who testified that his sergeant had requested him to pick up somebody involved in a traffic accident with injuries. The officer also testified that he could not be certain that he handcuffed appellant, but told him he was under arrest, and believed he told him it was for a traffic accident with injuries. He did not advise appellant of his rights.
Officer Thomas, who was with Officer Oliphant, subsequently testified that appellant was not handcuffed, and that he (Thomas) was not aware that appellant was under arrest. However, he conceded that it was possible that Officer Oliphant told appellant he was under arrest. The officers took appellant and his friend to the police station, and (although he did not smell any alcohol), Officer Oliphant later took appellant to Bethesda Hospital for a blood alcohol test.
Marie Lavoie, the officer in charge of the investigation, spoke with appellant at the police station, and later testified that he was not under arrest at that time. She testified that he was not in custody and that he gave a taped statement which was part of the accident investigation. Officer Lavoie read Miranda warnings to the appellant prior to questioning him. Officer Lavoie also told him:
What I need to do here Eric so you understand is read you what we have the rights card here. Anytime we talk to anybody involving an investigation like we are doing it is important that you understand what your rights are. It doesn't mean anything other than that it is important to us that you understand what your rights are. Do you understand that? Okay, this is one of those things is a big deal and I want to make sure we're understanding each other Okay?
After appellant told Officer Lavoie and Detective Bean what he could recall about the accident and the events of that night, Officer Lavoie stated:
Alright, Eric, I'm going to let you know at this point that we're gonna kinda change hats here, ok? It's an accident with serious injuries and we do have a fatality so pending on the results of the blood test that was taken from you at the hospital, if it comes back that you were under the influence of alcohol at the time then proper charges will be *1150 filed. I have to let you know that so I'm just going to ask you a few questions that would cover that aspect as far as the DUI charge, driving under the influence charge. Do you understand?... .
The officer then asked appellant some questions regarding his drinking that night. She later acknowledged that she made the "changing hats" remark as a way to signify to appellant that she was going from the accident portion of the investigation into the criminal portion of the investigation.
The record does not reflect that the officer ever told the appellant that he was required to answer any questions or otherwise referred to his obligation under the accident investigation statute. We also note that the trial court recognized that even if appellant was not under "arrest," he was clearly being detained in police custody.
The blood alcohol test, approximately two and a half hours after the accident, revealed that appellant's blood alcohol content was .00. He was subsequently charged with vehicular homicide, reckless driving, and two counts of culpable negligence. Defense counsel filed a motion to suppress appellant's statement, which the court denied following a hearing. Appellant also filed a motion in limine requesting, in part, that the court preclude the state from introducing testimony regarding his drinking on the night of the accident. He maintained that any testimony about drinking would not be relevant. The court denied the motion.
Appellant argues that his statement was privileged under section 316.066, Florida Statutes (1988) because it was made for purposes of an accident investigation.
Section 316.066 (1988) provides, in part:
Each accident report made by a person involved in an accident shall be without prejudice to the individual so reporting and shall be for the confidential use of the department or other state agencies having use of the records for accident prevention purposes... . No such report shall be used as evidence in any trial, civil or criminal, arising out of an accident... .
The Florida Supreme Court addressed this statute as it pertained to the results of a blood alcohol test in Brackin v. Boles, 452 So.2d 540 (Fla. 1984):
We now see no need for a distinction between the accident report investigation and the criminal investigation except as it pertains to a defendant's individual communications to a police officer or in a report submitted by a defendant in accordance with the statute... .
... The statute only prohibits the use of communications "made by persons involved in accidents" in order to avoid a fifth amendment violation. The distinction this Court has previously made between investigations for accident report purposes and investigations for purposes of making criminal charges is artificial, is not a proper interpretation of the statute, and must be eliminated. We clearly and emphatically hold that the purpose of the statute is to clothe with statutory immunity only such statements and communications as the driver, owner, or occupant of a vehicle is compelled to make in order to comply with his or her statutory duty under section 316.066(1) and (2). (emphasis added)
In Yost v. State, 542 So.2d 419 (Fla. 4th DCA 1989), this court, citing to Brackin, held it to be reversible error for the trial court to allow testimony of the investigating officer that appellant advised him at the scene that he had consumed six or seven beers. Admitting such testimony violated section 316.066(4). See also Thomas v. Gottlieb, 520 So.2d 622 (Fla. 4th DCA 1988).
In Alley v. State, 553 So.2d 354 (Fla. 4th DCA 1989), rev. denied, 563 So.2d 634 (Fla. 1990), appellant appealed her conviction for driving under the influence-manslaughter. At the scene of the accident, appellant stated that she had been drinking. This court addressed whether appellant's statements at the scene and later at a medical clinic were given during the accident report phase of the investigation. It concluded:

*1151 There is substantial competent evidence to conclude the accident investigation phase continued until the officer gave appellant her Miranda warnings at the medical clinic. Appellant made the questioned statements during the accident phase of the investigation.
Appellant argues that although the detectives gave him Miranda warnings prior to taking his statement, Officer Lavoie testified that she considered, at all relevant times, that she was investigating and questioning appellant about an accident and not a crime. Appellant maintains the accident investigation continued at least until Lavoie "changed hats." Consequently, appellant maintains that the fact that he was given Miranda warnings did not deprive him of the statutory privilege. See also Pastori v. State, 456 So.2d 1212 (Fla. 2d DCA 1984).
In West v. State, 553 So.2d 254 (Fla. 4th DCA 1989), this court recognized that it may be difficult for a defendant to realize when an accident investigation has ended and a criminal investigation has begun, and determined that unless a defendant has been apprised by police that the questions being asked are part of a criminal investigation the statements made in response to those questions will be deemed privileged. West held that the statements fell within the accident investigation privilege where appellant was subjected to express questioning while in police custody both before and after being informed of his Miranda rights. See also the pre-Brackin opinions, Elder v. Robert J. Ackerman, Inc., 362 So.2d 999 (Fla. 4th DCA 1978), cert. denied, 368 So.2d 1366 (Fla. 1979); Porter v. Pappas, 368 So.2d 909 (Fla. 3d DCA 1979).
Appellant notes that his statement contained details about what happened before, during and after the accident that the jury could not have known absent its admission. He argues that the state made its case based primarily on his statement. At trial witnesses gave conflicting testimony about the speed he was traveling. Additionally, two officers gave conflicting testimony concerning skid marks at the scene.
The state maintains that, notwithstanding Officer Lavoie's impressions, appellant was read the Miranda warnings and signed the rights card. One officer testified that he placed appellant under arrest for an accident with injuries and that appellant was in fact in custody at the time he gave the statement. The state notes that Officer Rieger prepared the initial accident report for Tallahassee, and he was not even present during Lavoie's questioning.
We conclude that it was an abuse of discretion to admit appellant's statement at trial. The officer's reading appellant Miranda warnings, alone, does not change the nature of the investigation. West v. State. Not only did the officer testify that she was conducting an accident investigation after the warnings were given, but the remarks she made at the time of the warning suggest that is precisely what she was doing. For example, she commented that she reads the rights "anytime we talk to anybody involving an investigation ..." and that "it doesn't mean anything other than it is important to us that you understand what your rights are." The officers should have apprised appellant that their questions were part of a criminal investigation, if in fact they were, and because they did not do so, those statements appellant made while at the police station prior to the point at which Officer Lavoie "changed hats," even though informed of his Miranda rights, fell within the accident investigation privilege. West.
We are not insensitive to the argument that Brackin v. Boles is susceptible of a broader interpretation considering the Court's recognition that the purpose of the accident investigation statute is "to avoid a fifth amendment violation." This language, considered alone, might support a conclusion that a defendant, once given Miranda warnings, makes a statement at his own risk, particularly where he has not been told that he is required to answer. Under such an interpretation of Brackin, consideration would then be focused only on whether constitutional, rather than statutory, rights were invaded. However, this issue has already been resolved more narrowly *1152 by this court in West, in which we held:
Recognizing that it may be difficult for a defendant to realize when an accident investigation has ended and a criminal investigation has begun, courts have held that unless a defendant has been apprised by police that the questions being asked are part of a criminal investigation, the statements made in response to those questions will be deemed privileged pursuant to § 316.066(4).
* * * * * *
Because the police never apprised West of the distinction between the accident and criminal phases of the investigation, we hold that the statements at issue fall within the accident investigation privilege and are thus inadmissible pursuant to § 316.066(4).
Id. at 256. Consequently, the court's admitting the statement was error. It is also apparent that the error was not harmless. State v. DiGuilio, 491 So.2d 1129 (Fla. 1986).
Appellant also asserts that he was not charged with an alcohol related offense and that the court erred in admitting any evidence regarding his drinking on the night of the accident. He notes that the blood test showed a blood alcohol level of .00 and detected no drugs. Two police officers, a medic, and a nurse testified that he did not appear impaired. His expert witness testified that, although it is very hard to extrapolate back in time, appellant's blood alcohol level at the time of the accident could have been between .03 and .04, and that an alcohol level under .05 is usually associated with sociability and lowered inhibitions, not impairment.
In West, this court also held:
... the trial court committed reversible error in admitting evidence that he had a trace of valium in his blood... . Since ... the valium had no measurable effect on West's driving, the evidence concerning the valium had no probative value or relevance to the charge of driving under the influence of alcohol and it was unfairly prejudicial. Thus, it should have been excluded.
553 So.2d at 255.
Appellant contends that, as in West, the evidence concerning alcohol had no probative value or relevance to the charges brought against him. See also State v. McClain, 508 So.2d 1259 (Fla. 4th DCA 1987), aff'd, 525 So.2d 420 (Fla. 1988).
However, evidence that appellant drank about four beers is relevant on the issue of reckless driving. In Filmon v. State, 336 So.2d 586 (Fla. 1976), cert. denied, 430 U.S. 980, 97 S.Ct. 1675, 52 L.Ed.2d 375, reh'g. denied, 431 U.S. 960, 97 S.Ct. 2689, 53 L.Ed.2d 279 (1977), the Supreme Court, in a case of manslaughter by culpable negligence, found that evidence that the appellant had imbibed significantly immediately preceding the tragic incident, although not significant to support the charge of intoxication, could be considered by the jury along with other acts of negligence. It could properly be considered not as a circumstance which renders acts wanton and reckless which are not otherwise so, but upon the theory that, though not actually intoxicated, persons under the influence of alcohol to any considerable degree are more apt to be heedless, reckless, and daring than when free from such influence.
Here, the state notes that in closing argument it emphasized to the jurors that it was not contending appellant was drunk. The state did argue, however, that the alcohol had an effect on him. The trial court could conclude that the testimony was not unfairly prejudicial. In State v. McClain, 525 So.2d 420 (Fla. 1988), the Florida Supreme Court noted that the trial court must weigh the danger of unfair prejudice against probative value and, in applying the balancing test, the trial court necessarily exercises its discretion. It noted that the same item of evidence may be admissible in one case and not in another, depending upon the relation of that item to the other evidence. Only when unfair prejudice substantially outweighs the probative value of the evidence is it excluded. We conclude that in this case the admission of evidence of drinking was not an abuse of *1153 discretion. We do not consider this result to be inconsistent with West.
Additionally, on remand, we caution the trial court to use care to restrict the introduction of unnecessary inflammatory evidence concerning the victims' physical condition and the details of surgical procedures, and to use particular caution against prejudicial use of family member witnesses for identification where other credible witnesses are available. Cf. Welty v. State, 402 So.2d 1159 (Fla. 1981); Barnes v. State, 348 So.2d 599 (Fla. 4th DCA 1977).
We do not address any sentencing issues, which are now moot. As to all other issues raised, we find no error or abuse of discretion. The judgment and sentence are reversed. We remand for a new trial.
We certify the following question to the supreme court:
WHETHER STATEMENTS MADE IN THE COURSE OF A POST ACCIDENT INVESTIGATION BY AN INDIVIDUAL IN POLICE CUSTODY ARE PRIVILEGED UNDER § 316.066, FLORIDA STATUTES, WHERE MIRANDA WARNINGS HAVE BEEN GIVEN AND THE INDIVIDUAL IS NOT TOLD THAT HE OR SHE IS REQUIRED TO ANSWER THE QUESTIONS.
DELL, J., concurs.
LETTS, J., concurring specially with opinion.
LETTS, Judge, concurring specially.
This is a case of some notoriety and I concur specially to reiterate that this is not a drunk-driving case. The appellant's blood alcohol content was zero.
As to the statute, section 316.066, unequivocally commands that an accident report by an involved person cannot be used as evidence in any trial arising out of that accident, I question the value of such legislation. Supposedly, it is predicated upon the overwhelming need that the state be apprised of the true nature of every accident so that the highways will be "safer for all society." Department of Highway Safety and Motor Vehicles v. Corbin, 527 So.2d 868, 871 (Fla. 1st DCA), rev. denied, 534 So.2d 399 (Fla. 1988). Too often, however, it is used by defendant as a cloak to render incriminating statements inadmissible and contributes little, if anything, to the welfare of society. Such appears to me to be what happened here.