585 So.2d 457 (1991)
Randall Scott LEFEVRE, Appellant,
v.
STATE of Florida, Appellee.
No. 90-3009.
District Court of Appeal of Florida, First District.
September 4, 1991.
Rehearing Denied October 2, 1991.
Nancy Daniels, Public Defender, Gail E. Anderson, Asst. Public Defender, for appellant.
Robert A. Butterworth, Atty. Gen., Suzanne G. Printy, Asst. Atty. Gen., for appellee.
KAHN, Judge.
Randall Scott Lefevre appeals his conviction of attempted second degree murder with a firearm and shooting into an occupied vehicle. We reverse appellant's conviction and remand for a new trial because the evidence did not support the trial court's jury instruction on flight as evidence of guilt.
At trial Robert Dewayne Tillis and Billy Pigg, both 17-year-old white men, testified that they were driving around Bonifay looking for a job on February 19, 1990. While they were driving, they saw Lefevre, an 18-year-old black man, walking along the road. According to Tillis and Pigg, Lefevre was "ranting and raving." After passing Lefevre once, Tillis, the driver, decided to turn around and drive by once more to find out what the problem was. Pigg, the passenger, wanted to go back because Lefevre's actions "pissed me off." Tillis stopped the car at the side of the road to facilitate inquiry of Lefevre. Pigg related the following:
We [Pigg and Tillis] stopped and asked him, you know, what his problem was. He [Lefevre] says, `Do you have problem with me?' And I said we don't have no problem. I just want to know what the `F' your problem is.
He says, `Maybe I just want to kick your you know what.' He pulled out the gun, and that is when he started shooting.
Six shots struck Tillis in his left arm.
Lefevre testified that he was carrying his girlfriend's handgun on the day of the shooting in order to return it to get some money. He was in the area where the shooting occurred because he was looking *458 for a job. As he walked along the road a car pulled beside him so close that he had to jump out of the way. The passenger yelled, but appellant kept walking and did not respond. The car passed, then turned and came back toward him. The passenger, Mr. Pigg, then yelled, "Get the `F' out of the road, nigger boy." According to Lefevre, Tillis then stopped, rolled down the window and said "What the `F' is your problem, nigger boy?" Lefevre responded, "Hey, don't mess with me. I ain't done nothing to you." Tillis asked Lefevre if he had ever been shot before. Lefevre contended he then saw a gun in Tillis' hand, leading him to immediately turn to walk away from the car. He recalled hearing a snap and the statement, "Let's show him." Lefevre concluded his version by relating that he pulled out his gun and fired because he was afraid he was about to be shot.
Although other witnesses testified, none could shed light on what transpired between appellant and the two men just before the shooting. The victim, Mr. Tillis, could not substantiate either Pigg's or Lefevre's version: "I reckon something between him and Billy was said, and I can't remember." Tillis did testify to his belief that some black people "get an attitude" and "if they come up and start saying stuff, I can't just sit there." A police investigator examined the car an hour and a half after the incident but did not look for a weapon as he gave no thought to the possibility of Tillis or Pigg possessing a gun.
After the shooting Lefevre ran to his girlfriend's nearby apartment. Very shortly thereafter, an officer located appellant in the apartment and arrested him.
The jury found Lefevre guilty of attempted second degree murder with a firearm and shooting into an occupied vehicle. Lefevre was sentenced to fifteen years imprisonment followed by ten years probation.
Lefevre argues that the trial court should not have instructed the jury that flight is circumstantial evidence of guilt.[1] The instruction on flight was error under the circumstances posed by this case.
Evidence of flight is admissible as circumstantial evidence of guilt "where there is sufficient evidence that the defendant fled to avoid prosecution of the charged offense." Merritt v. State, 523 So.2d 573 (Fla. 1988). In Jackson v. State, 575 So.2d 181 (Fla. 1991), the Florida Supreme Court explained:
Departure from the scene of a crime, albeit hastily done, is not the flight to which the jury instruction refers. Otherwise, the instruction would be given every time a perpetrator left the scene, and it would be omitted only in those cases where the perpetrator waited for the police to arrive.
575 So.2d at 188-189.
The flight instruction is permitted in limited circumstances and constitutes an exception to the general rule prohibiting a trial judge from commenting on the evidence. Whitfield v. State, 452 So.2d 548 (Fla. 1984). The wording of the jury instruction suggests that circumstances indicating a sense of fear will support its giving. Fear, however, is not an element of either crime Lefevre stood accused of, nor is it anything but a natural reaction to the events that resulted in this prosecution. To support the flight instruction, the record must at the least indicate not only that the accused left the scene, but that the actions of the accused indicate intent to avoid detection or capture so as to be properly translated into consciousness of guilt. Payne v. State, 541 So.2d 699 (Fla. 1st DCA 1989); Williams v. State, 427 So.2d 331 (Fla. 3d DCA 1983); Barnes v. State, 348 So.2d 599 (Fla. 4th DCA 1977).[2]
*459 The evidence presented in the instant case does not support the jury instruction on flight. Pigg and Gina Kneller, a witness to the shooting, testified that Lefevre ran towards some apartments after the shooting. Lefevre stated that he was scared and ran to the girlfriend's apartment. The shooting occurred at midday in the middle of town. According to the arresting officer, he located appellant "a couple of apartments" north of the scene. This evidence suggests that Lefevre left the scene of the shooting because he was afraid for his own safety. The evidence does not support an inference that appellant's act was circumstantially probative of guilt. He did not elude law enforcement, as evidenced by his arrest only very shortly after the incident.
On the facts of this case, the jury instruction on flight unfairly tended to negate Lefevre's claim of self defense, because running from the scene was at least as consistent with his claim of justifiable fear for his life as with a sense of guilt. Appellant's actions being equally consistent with innocence as guilt, they could not properly support a circumstantial inference of guilt.[3]Jackson, 575 So.2d at 188; Rhodes v. State, 547 So.2d 1201 (Fla. 1989). Since the flight instruction was not supported by the evidence and placed undue emphasis upon behavior actually consistent with Lefevre's defense, the error was not harmless. We reverse the convictions and remand for a new trial.
SHIVERS and ZEHMER, JJ., concur.
NOTES
[1] The court gave the following instruction: [f]light is considered to exist when an accused departs from the vicinity of a crime under circumstances such as to indicate a sense of fear; or of guilt or to avoid arrest, even before the defendant has been suspected of a crime. Flight is a circumstance of guilt that you, the jury, may consider.
[2] "Prior to any consideration of flight as evidence of guilt, flight itself must first be established. It is a legal concept requiring two factors: absence, and the motive of evading prosecution. In the legal sense, flight and mere absence or departure following the commission of a crime are not synonymous, although some courts inaccurately use the term `flight' in the latter sense. Flight in the proper sense consists of a voluntary withdrawal in order to avoid arrest, detention, or the institution or continuance of criminal proceeding." Case Comment, Criminal Law: Nature and Use of Flight, 3 U.Fla. L.Rev. 121 (1950).
[3] By this holding we do not suggest that the state could not properly introduce evidence that appellant retreated immediately from the scene, nor that the prosecutor could not comment upon the fact during argument. We hold, rather, that the trial court erred by placing his official imprimatur, through the jury instruction, upon this evidence as a circumstance of guilt.