613 So.2d 437 (1993)
STATE of Florida, Petitioner,
v.
Eric C. NORSTROM, Respondent.
No. 78568.
Supreme Court of Florida.
January 14, 1993.
Rehearing Denied March 4, 1993.
*438 Robert A. Butterworth, Atty. Gen. and Joan Fowler, Sr. Asst. Atty. Gen., West Palm Beach, for petitioner.
Michael Salnick of Salnick & Krischer, West Palm Beach, for respondent.
OVERTON, Justice.
We have for review Norstrom v. State, 587 So.2d 1148 (Fla. 4th DCA 1991), in which the district court held that statements made by Norstrom, after he was informed of his Miranda[1] rights and signed a waiver form, were not admissible because the statements were made during the accident investigation phase of the incident and were, therefore, privileged under section 316.066, Florida Statutes (Supp. 1988). The district court certified the following to be a question of great public importance:
WHETHER STATEMENTS MADE IN THE COURSE OF A POST ACCIDENT INVESTIGATION BY AN INDIVIDUAL IN POLICE CUSTODY ARE PRIVILEGED UNDER § 316.066, FLORIDA STATUTES, WHERE MIRANDA WARNINGS HAVE BEEN GIVEN AND THE INDIVIDUAL IS NOT TOLD THAT HE OR SHE IS REQUIRED TO ANSWER THE QUESTIONS.
Id. 587 So.2d at 1153. We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. We find that, since Norstrom voluntarily made the statements after Miranda warnings had been given, there is no evidence that Norstrom's Fifth Amendment rights were violated. Accordingly, we find that his statements were admissible and answer the question in the negative.
The relevant facts, as set forth in the district court's opinion, are as follows:
According to a statement made by the 16-year-old [Norstrom], on the night of March 25, 1988, he drove to a party attended by fellow high school students. He drank about four eight-ounce cups of beer while there. After the party, the students gathered at the end of High Ridge Road, parking their cars along the side of the road and standing around near them and in the road at the end of the dead-end street. There were no street lights in the area.
Sometime before midnight, [Norstrom] left the High Ridge Road party to take a friend home. He then headed back to pick up another friend. He had difficulty finding the party again. He drove down the street at what he estimated to be seventy to seventy-five miles per hour. By the time he saw the people at the end of the street, it was too late to stop. He slammed on the brakes and lost control of his car. The car struck seven persons, killing one and seriously injuring two others. Several cars were also struck.
Following the accident, [Norstrom] told his friend to find a police officer. The friend found Officer Oliphant who testified that his sergeant had requested him to pick up somebody involved in a traffic accident with injuries. The officer also testified that he could not be certain that he handcuffed [Norstrom], but told him he was under arrest, and believed he told him it was for a traffic accident with injuries. He did not advise [Norstrom] of his rights.
Officer Thomas, who was with Officer Oliphant, subsequently testified that [Norstrom] was not handcuffed, and that he (Thomas) was not aware that [Norstrom] was under arrest. However, he conceded that it was possible that Officer Oliphant told [Norstrom] he was under arrest. The officers took [Norstrom] and his friend to the police station, and (although he did not smell any alcohol), Officer Oliphant later took [Norstrom] to Bethesda Hospital for a blood alcohol test.
Marie Lavoie, the officer in charge of the investigation, spoke with [Norstrom] at the police station, and later testified that he was not under arrest at that time. She testified that he was not in custody and that he gave a taped statement which was part of the accident investigation. Officer Lavoie read Miranda warnings to [Norstrom] prior to *439 questioning him. Officer Lavoie also told him:
What I need to do here Eric so you understand is read you what we have the rights card here. Anytime we talk to anybody involving an investigation like we are doing it is important that you understand what your rights are. It doesn't mean anything other than that it is important to us that you understand what your rights are. Do you understand that? Okay, this is one of those things is a big deal and I want to make sure we're understanding each other. Okay?
After [Norstrom] told Officer Lavoie and Detective Bean what he could recall about the accident and the events of that night, Officer Lavoie stated:
Alright, Eric, I'm going to let you know at this point that we're gonna kinda change hats here, ok? It's an accident with serious injuries and we do have a fatality so pending on the results of the blood test that was taken from you at the hospital, if it comes back that you were under the influence of alcohol at the time then proper charges will be filed. I have to let you know that so I'm just going to ask you a few questions that would cover that aspect as far as the DUI charge, driving under the influence charge. Do you understand? ... .
The officer then asked [Norstrom] some questions regarding his drinking that night. She later acknowledged that she made the "changing hats" remark as a way to signify to [Norstrom] that she was going from the accident portion of the investigation into the criminal portion of the investigation.
The record does not reflect that the officer ever told [Norstrom] that he was required to answer any questions or otherwise referred to his obligation under the accident investigation statute... .
The blood alcohol test, approximately two and a half hours after the accident, revealed that [Norstrom's] blood alcohol content was .00.
587 So.2d at 1149-50.
The statements made by Norstrom after he had been read his Miranda rights related to what occurred prior to, during, and after the accident. The statements included an admission that he had been traveling "about seventy" miles per hour and had consumed some alcohol during the evening. The taped statements were played to the jury and included his acknowledgment that he understood his Miranda rights.
The issue presented by the certified question is whether Norstrom's statements were privileged under section 316.066 in circumstances where: (1) the statements were made after Norstrom had been read his Miranda warnings and had signed a waiver form; (2) Norstrom had not been advised that, pursuant to section 316.066, he must answer questions pertaining to the accident; and (3) Norstrom's statements were made while the investigating officer was proceeding in the accident investigation phase of the incident, as distinguished from the criminal investigation of the incident.
The district court held that the Miranda warnings alone did not change the nature of the investigation from accident to criminal to allow for the admission of Norstrom's statements. Id., 587 So.2d at 1151. More importantly, the district court held that another warning, in addition to the standard Miranda warning, is required before a voluntary statement by a defendant can be admitted without violating section 316.066. The district court stated that, "`unless a defendant has been apprised by police that the questions being asked are part of a criminal investigation, the statements made in response to those questions will be deemed privileged pursuant to § 316.066(4).'" Id. 587 So.2d at 1152 (quoting West v. State, 553 So.2d 254, 256 (Fla. 4th DCA 1989)). The district court concluded that the "statements [Norstrom] made while at the police station prior to the point at which Officer Lavoie `changed hats,' even though informed of his Miranda rights, fell within the accident investigation privilege." Id. 587 So.2d at 1151.
The pertinent part of section 316.066, which sets forth the statutory privilege, reads as follows:

*440 (4) Each accident report made by a person involved in an accident shall be without prejudice to the individual so reporting and shall be for the confidential use of the department or other state agencies having use of the records for accident prevention purposes... . No such report shall be used as evidence in any trial, civil or criminal, arising out of an accident... .
We interpreted the application and scope of that privilege in our decision in Brackin v. Boles, 452 So.2d 540, 544 (Fla. 1984), in which we stated:
We now see no need for a distinction between the accident report investigation and the criminal investigation except as it pertains to a defendant's individual communications to a police officer or in a report submitted by a defendant in accordance with the statute... .
... .
... The statute only prohibits the use of communications "made by persons involved in accidents" in order to avoid a fifth amendment violation. The distinction this Court has previously made between investigations for accident report purposes and investigations for purposes of making criminal charges is artificial, is not a proper interpretation of the statute, and must be eliminated. We clearly and emphatically hold that the purpose of the statute is to clothe with statutory immunity only such statements and communications as the driver, owner, or occupant of a vehicle is compelled to make in order to comply with his or her statutory duty under section 316.066(1) and (2).
We emphasized in Brackin that "[t]he statute only prohibits the use of communications ... in order to avoid a fifth amendment violation." Id. The district court in this case recognized that our decision in Brackin is susceptible to an interpretation that a statement made after Miranda warnings had been given could be admissible under the statute, "particularly where [a defendant] has not been told that he is required to answer." Norstrom, 587 So.2d at 1151. We find that the district court erred in not focusing on whether Norstrom's Fifth Amendment rights were violated.
The purpose of the United States Supreme court's decision in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), was to establish an effective means to inform accused persons of their rights, including their right to remain silent. The purpose of section 316.066(1) was to obtain information on accidents. The legislature established a statutory privilege under section 316.066(4) to ensure that accident information could be compelled without Fifth Amendment violations.
As noted by the district court, the record reflects that Norstrom was never advised that he had to answer questions regarding the accident. Further, there is no evidence in this record that Norstrom believed he had to answer questions to provide accident information to the investigating officer. In fact, rather than being told that he must provide accident information to the investigating officer, Norstrom was informed of his Miranda rights, which included the right to remain silent. The record establishes that Norstrom expressly waived his right to remain silent.
Given the factual circumstances of this case, we find that the statements made by Norstrom were voluntary and that there was no Fifth Amendment violation. We hold that the privilege granted by section 316.066 is not applicable in this case where Norstrom was not told that he had to respond to the questions asked by the officers and where Norstrom was given his Miranda rights. Accordingly, we quash the decision of the district court on this issue. Furthermore, we also disapprove its prior decision in West v. State, 553 So.2d 254 (Fla. 4th DCA 1989). To clarify our decision, we emphasize that the privilege granted under section 316.066 is applicable if no Miranda warnings are given. Further, if a law enforcement officer gives any indication to a defendant that he or she must respond to questions concerning the investigation of an accident, there must be an express statement by the law enforcement official to the defendant that "this is *441 now a criminal investigation," followed immediately by Miranda warnings, before any statement by the defendant may be admitted.
On the second issue, we agree with the district court that the evidence that Norstrom had consumed alcoholic beverages on the night of the incident is relevant to the prosecution's charge of reckless driving in a case of manslaughter by culpable negligence, and, consequently, that this evidence was properly presented in the trial of this cause.
Finally, we note that the district court was concerned that Norstrom's right to a fair trial could have been prejudiced by the prosecution's introduction of certain evidence regarding the physical condition of the victims, the extensive details of surgical procedures, and the use of family member witnesses for identification purposes where other credible witnesses were available. Because the district court reversed the trial court on the admissions issue, it did not address the introduction of this evidence; nor was the issue presented in the briefs before this Court.
Accordingly, we answer the question in the negative, quash, in part, the decision of the district court, and remand this cause to the district court with directions to consider the other issues raised in the initial appeal.
It is so ordered.
BARKETT, C.J., and McDONALD, SHAW, GRIMES, KOGAN and HARDING, JJ., concur.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).