695 So.2d 771 (1997)
STATE of Florida, Appellant,
v.
Carl Brune JOHNSON, Jr., Appellee.
No. 96-2041.
District Court of Appeal of Florida, Fifth District.
April 25, 1997.
*772 Robert A. Butterworth, Attorney General, Tallahassee, and Roberta J. Tylke, Assistant Attorney General, Daytona Beach, for Appellant.
Russell E. Crawford, Orlando, for Appellee.
W. SHARP, Judge.
The state appeals from an order which denied the rehearing of an order suppressing blood alcohol tests, in Johnson's criminal prosecution. We disagree with the trial judge's initial ruling that there was no probable cause for the deputy's order of a blood test under the circumstances presented; further, we find that the successor judge improperly overturned the initial trial judge's ruling that the state would be permitted to present additional testimony to establish probable cause for the blood test. Accordingly, we reverse.
Johnson was charged with two counts of DUI manslaughter and one count of property damage.[1] The charges stemmed from a multiple vehicle collision on Highway 192, east of St. Cloud, Florida, which occurred in 1994. Johnson was travelling west on the two-lane highway. He crossed the centerline, and hit a pick-up truck travelling east, with the left front of his vehicle. That caused the pick-up to go out of control, cross into the west-bound lane, and collide with a truck, which had been following Johnson. A mini-van travelling behind the truck skidded into a ditch to avoid hitting the truck.
Johnson's car, rendered inoperable but only with damage to the left front end, came to rest over the center line, in the middle of the road to the west of the other vehicles. He was not hurt. He could not remember what happened, other than that someone hit him.
The truck driver and the driver of the van were also not hurt, and were able to point Johnson out as the driver of the car. The truck driver said Johnson had side-swiped the pick-up, after crossing the center line of the highway. Tragically, a young husband and wife (who was pregnant) were killed in the pick-up, and were confirmed dead at the accident scene.
Trooper Bowen, a homicide investigator at the scene of the accident, prepared the accident report and conducted the criminal investigation. Trooper Tindall assisted him. She obtained information from Johnson concerning his driver's license and auto registration. She, as well as Bowen (based on his accident report), ordered that a blood test be performed on Johnson. Paramedics who had responded to the accident, actually did the blood draw at the accident scene. Johnson's blood alcohol level was .09.
Defense counsel moved to suppress the results of the blood test on the ground that there was no probable cause justifying the officer's request. Section 316.1934(2) provides that the results of blood tests performed pursuant to section 316.1933 are admissible in any civil or criminal trial and a test result of .08 or greater, is prima facie evidence that the person was under the influence of alcoholic beverages. Section 316.1933 prescribes the methods and procedures which must be followed in conducting a blood test in order to make it admissible and to establish it as a basis for the statutory presumption. They are not at issue in this case. Probable cause for the officer's request for a blood test is contested.
Subsection (1) of section 316.1933 provides a law enforcement officer may order or compel a blood test if he or she:
[H]as probable cause to believe that a motor vehicle driven by or in the actual physical control of a person under the influence of alcoholic beverages, ... has caused the death or serious bodily injury of a human being, ...
*773 Defense counsel filed a motion to suppress the blood test results in this case, on the ground that none of the three probable cause findings existed in this case; i.e., that the officer had no probable cause to believe: 1) that Johnson was the driver of the vehicle; 2) that he caused the fatalities; or 3) that he was under the influence of alcohol at the time of the accident.
At the hearing before Judge Rodriguez on the motion to suppress in September of 1995, Trooper Tindall presented the only testimony for the state. She said she observed Johnson standing next to his vehicle, at the general crash scene. His vehicle was inoperable, located west of the other vehicles, in the east-bound lane. It had been damaged on its left front and she was also aware there were fatalities at the crash site. Johnson was very upset and concerned about the other people involved in the crash. She did not tell him there were fatalities.
She testified that Officer Bowen told her Johnson was the driver of the car involved in the accident. He asked her to check his driver's license and registration. In doing so, she stood close to Johnson on purpose. She smelled alcohol on his breath. She said it was "obvious." She also noted his eyes were blood shot, he was swaying, and had a mildly slurred voice when he spoke. She had been trained to detect symptoms of intoxication. Based on her observations of Johnson, she testified she determined she should order a blood draw on him, and she supervised its conduct by the paramedics. The paramedics testified they did not observe any evidence that Johnson had been drinking alcohol.
At the close of this testimony, the defense argued the state failed to prove Johnson was the driver of the car that caused the deaths. The trial court was concerned about whether there was a basis for Tindall to have concluded that Johnson was the driver of the car. It allowed the state to recall Tindall. Tindall then testified that she had determined Johnson was the driver of the car. Officer Bowen had told her that fact. She had also observed Johnson standing next to the car when she arrived, and there was no one else in it or near it. Further, Johnson also admitted to her he was the driver, but that he did not know what had happened.
The trial court thought the state had failed to establish probable cause for the blood draw. Accordingly it suppressed the blood test results, subject to the state being allowed to produce additional witnesses prior to trial. The court and the parties discussed the fact that Trooper Bowen was at that time unavailable because he was on military duty, but he would be back in November of 1995. Based on his accident report, which is in the record on appeal, Bowen would have been able to satisfy any probable cause issues for the blood draw.
On November 9, 1995, the hearing on the motion to suppress was continued because although Bowen had returned from his military assignment, defense counsel stated that he wished to have an opportunity to depose Bowen before the hearing. Both parties agreed to a continuance. The trial was set for January 1996.
At the pretrial hearing in January, defense counsel did not appear. The state asked for an additional continuance because the suppression hearing had not been concluded. The prosecutor also noted that defense counsel had not yet deposed Trooper Bowen. The trial court granted the continuance and reset the trial for March. Apparently an additional continuance was granted for the March trial date.
By June of 1996, Judge Kaney had been assigned to the case. Defense counsel filed a motion for speedy trial, asking that the trial be set within forty-five days. At a hearing held in June of 1996, the state requested that the trial be put off at least thirty days so that the motion to suppress hearing could be completed. Judge Kaney said at that hearing: "Okay. I don't schedule them. So I made a note, and the schedule will be coming out." The trial was set for July 22, 1996, and pretrial for July 17, 1996.
On the same day that the trial was scheduled, the state filed a motion for rehearing on the suppression issue, and requested a hearing date between July 10 and July 15. Judge Kaney summarily denied a rehearing of the motion to suppress, in effect suppressing the *774 blood test evidence without allowing any additional testimony from the state. This order was appealed.
We think this case must be reversed for two reasons. Initially, we note that the successor judge in this case, Judge Kaney, by denying a rehearing on the motion to suppress, in effect altered the prior judge's ruling. Judge Rodriguez had initially ruled that the state would be permitted to present additional evidence, chiefly the testimony of Trooper Bowen, to buttress the probable cause grounds for ordering the blood draw. Absent any grounds for finding the state acted willfully or contumaciously in not completing the hearing or any basis to find Johnson was prejudiced by the delay, this was an abuse of discretion,[2] and beyond his scope of authority. See Haliburton v. Singletary, 691 So.2d 466 (Fla.1997). If a petition for rehearing is merely a reargument on the points and facts considered by the first judge, then the second judge is without authority to reverse his predecessor. In this case, the completion of the motion to suppress hearing should have been held, as originally contemplated by Judge Rodriguez.
However, after reviewing a transcript of the hearing on the motion to suppress held before Judge Rodriguez, we respectfully disagree with him that probable cause to authorize the blood draw was not presented. Trooper Tindall established probable cause, based on her training and observation of Johnson, for her belief that Johnson had been drinking alcohol. The fact that there was some contrary testimony presented by the paramedics, who observed no impairment on the part of Johnson, is irrelevant.[3] The trial court must view the evidence in a light most favorable to the prosecution, unless the testimony is implausible or incredible as a matter of law.[4]
Tindall also supplied an adequate basis for her belief that Johnson was the driver of the car involved in the fatal accident. Officer Bowen told her that was the case. He had been told that Johnson was the driver by an eyewitnesses to the accident (the truck driver), although that did not come out at the suppression hearing. Although it may be hearsay, a police officer is justified in relying on what he or she is told by a fellow officer, in such instances to establish probable cause.[5]
Further, Johnson himself told Tindall that he was the driver of the car. This statement is not, as Johnson argues on appeal, clothed with the "accident privilege" immunity,[6] because Johnson's Fifth Amendment rights were not impacted at that point.[7] When that statement was made, Johnson was not in custody nor under arrest, thereby triggering the necessity to give him Miranda warnings.[8] Further, no objections to Trooper Tindall's testimony at the suppression hearing on that ground were made by defense counsel.[9] We also question whether the accident privilege or immunity for statements applies to probable cause hearings as opposed to criminal trials, since it appears to be limited solely to trials by the statute's express language.[10]
*775 The one probable cause issue which was not expressly covered at the suppression hearing was whether Johnson's vehicle caused the fatalities. Officer Tindall testified she learned of the fatalities at the accident site. She also testified she had observed the whole accident scene: Johnson, a west-bound car on the east side of the center line, with damage solely to his left front end, and the pick-up which had been east bound, crushed beneath a truck in the west-bound lane, east of where Johnson's car came to rest. Circumstantial evidence drawn from observations of the accident scene could have supplied her with grounds to conclude Johnson was a major factor in causing the accident.[11] If there had been any doubt about that issue, Officer Bowen's accident report indicates he could easily have explained his observations of skid marks and the contact point between the pick-up and Johnson's car. Trooper Tindall would have been entitled to rely on Trooper Bowen's observations, even if he had not by then communicated them to her.[12]
However, the trial judge was not concerned about this factor at the suppression hearing, nor did the defense counsel argue it at that point. Judge Rodriguez only thought proof of probable cause was lacking to establish Johnson was the driver of the car.
We hold that both trial judges erred in suppressing the blood test evidence in this case. Accordingly we reverse and remand for further proceedings.
REVERSED and REMANDED.
HARRIS and GRIFFIN, JJ., concur.
NOTES
[1] § 316.193, Fla.Stat. (1993).
[2] State v. Perez, 587 So.2d 630 (Fla. 3d DCA 1991).
[3] State v. Durden, 655 So.2d 215 (Fla. 1st DCA 1995).
[4] State v. Jensen, 765 P.2d 1028 (Colo.1988).
[5] See Henninger v. State, 667 So.2d 488 (Fla. 1st DCA 1996).
[6] § 316.066(4), Fla.Stat. (1993).
[7] See State v. Marshall, 695 So.2d 719 (Fla. 3d DCA 1996), rev. granted, 689 So.2d 1072 (Fla. 1997).
[8] See State v. Riley, 617 So.2d 340 (Fla. 1st DCA 1993).
[9] See Lindsey v. State, 636 So.2d 1327 (Fla.), cert. denied, 513 U.S. 972, 115 S.Ct. 444, 130 L.Ed.2d 354 (1994); Charles v. State, 683 So.2d 583 (Fla. 4th DCA 1996); Dobson v. State, 566 So.2d 560 (Fla. 5th DCA 1990), rev. denied, 577 So.2d 1326 (Fla. 1991).
[10] Section 316.066(4) provides:

Except as specified in this subsection, each accident report made by a person involved in an accident and any statement made by such person to a law enforcement officer for the purpose of completing an accident report required by this section shall be without prejudice to the individual so reporting. No such report or statement shall be used as evidence in any trial, civil or criminal. However, subject to the applicable rules of evidence, a law enforcement officer at a criminal trial may testify as to any statement made to the officer by the person involved in the accident if that person's privilege against self-incrimination is not violated. The results of breath, urine, and blood tests administered as provided in s. 316.1932 or s. 316.1933 are not confidential and shall be admissible into evidence in accordance with the provisions of s. 316.1934(2). Accident reports made by persons involved in accidents shall not be used for commercial solicitation purposes; provided, however, that use of an accident report for purposes of publication in a newspaper or other news periodical or a radio or television broadcast shall not be construed as "commercial purpose."
[11] See Carbone v. State, 564 So.2d 1253 (Fla. 4th DCA 1990); Jackson v. State, 456 So.2d 916 (Fla. 1st DCA 1984); State v. Williams, 417 So.2d 755 (Fla. 5th DCA 1982).
[12] See Johnson v. State, 660 So.2d 648 (Fla. 1995); State v. Eldridge, 565 So.2d 787 (Fla. 2d DCA 1990).