ON MOTION FOR REHEARING

MONACO, J.
We grant appellee’s motion for rehearing, withdraw our previous opinion and substitute the following therefor.
Donald Vedner, Jr., appeals from the judgment and sentence imposed on him after he was convicted by a jury of DUI manslaughter, vehicular homicide, driving under the influence causing damage or injury, and possession of drug paraphernalia, all of which arose out of an automobile collision in which his passenger was killed. His appeal causes us to compare and ex *1209 amine the tension governing statements made to law enforcement officers who are conducting accident investigations, and statements that are subject to the protection of the Fifth Amendment to the United States Constitution. Mr. Vedner gave three interviews to law enforcement officers, all of which were admitted into evidence. While we conclude that it was error to admit one of them, we affirm the judgment and sentence because we deem the error harmless.
ADJUDICATIVE FACTS
In the pre-dawn hours on the date of the accident, Mr. Vedner crashed into the back of a van driven by Mr. Martinez, who was driving in the eastbound lane of 1-4 at the time. Traffic had slowed because of highway construction, and Mr. Martinez reduced his speed to between 25 and 30 miles per hour. At that point in time, Mr. Vedner, who had been traveling at between 50 and 106 miles per hour, according to the varied testimony at trial, ran into the back of Mr. Martinez’ van. Mr. Vedner was thrown from the car, and Mr. Vedner’s passenger and best friend, Joshua Daly, died of massive head injuries.
A westbound witness to the accident who saw Mr. Vedner thrown from the car testified that he pulled over, approached Mr. Vedner, and smelled alcohol on him. A second witness and a police officer both testified that they also smelled an odor of alcohol coming from Mr. Vedner’s facial area.
A traffic homicide investigator, Lake Mary Police Officer Drummond, responded to the accident scene and immediately saw blood on Mr. Vedner’s face from various head injuries. While Officer Drummond smelled alcohol on Mr. Vedner, no blood sample was drawn at that time. Later, however, urine and blood samples were taken from Mr. Vedner at. the hospital. When Officer Drummond collected Mr. Vedner’s clothing which had been cut off at the scene, he found a pipe containing residue that the officer believed smelled like burnt marijuana inside one of Mr. Ved-ner’s pants pockets.
Law enforcement officers spoke to Mr. Vedner on three occasions prior to his being charged criminally. The first interview was conducted by Officer Drummond on the day after the accident. Before the interview started Officer Drummond read Mr. Vedner his Miranda[1] rights, and Mr. Vedner agreed to waive them. Mr. Ved-ner reported at that time that he had come from an establishment in Orange County called the “Ale House” at about 1:30 in the morning, where he consumed two and one-half beers. The interview continued:
Vedner: Yeah. And uh from there I got in the car and I don’t, I don’t know if it’s from getting hit in the head or what but I know for a fact that I was too drunk at the Ale House to remember what we did after that, I know it wasn’t — .
Officer Thomson: You don’t remember where you went after the Ale House or where you were going on 1-4?
Vedner: Uh, no.
Five days later, Mr. Vedner and his mother went to the Lake Mary Police Department to retrieve his personal property after being invited to do so by law enforcement officers. While there, he agreed to be interviewed a second time. Mr. Vedner was advised that he was not under arrest, that the officers had no intention of arresting him at that time, and that he was free to leave at any time. He was not again warned of his Miranda rights prior to being questioned, however, Mr. Vedner was told that as long as he was there, the *1210 officers wanted to ask him about the pipe and whether any marijuana was in the car. Mr. Vedner reported that at sometime between 1:30 and 4:30 a.m., he did smoke approximately three bowls of marijuana with his friend, Mr. Daly. At a suppression hearing held with respect to this interview, Officer Drummond testified that at the time of the second interview, he was “still investigating the accident.”
The third interview took place approximately six months later. At that time Officer Drummond again advised Mr. Ved-ner that he was not under arrest and that he was free to go at any time. Mr. Vedner replied that he understood. He was once again not advised pursuant to Miranda. When Officer Drummond and another interviewer, Officer Thomson, began asking Mr. Vedner about his marijuana use on the date of the accident, the following colloquy took place:
D. VEDNER: Are these the — are these questions? What are they for?
OFC. DRUMMOND: This is just to conclude to the rest of this investigation. This is the investigation right here. O.K. Uh, what we compiled here is not only medical records, uh, interviews, uh, and just evidence—
OFC. THOMSON: Vehicle information.
OFC. DRUMMOND: Right.
D. VEDNER: Like — as far as like the construction not having been signed up and stuff like that?
OFC. DRUMMOND: It has everything. Anything that has to do with that roadway, Florida Highway Patrol being out there—
When asked during a suppression hearing directed to this interview if the accident investigation was still ongoing, Officer Thomson replied that it was. Officer Drummond then informed Mr. Vedner that his blood alcohol level at the time of the crash was under .08, but that the results of the blood and urine tests revealed the presence of cocaine, marijuana and Valium in his system. Mr. Vedner once again pointed out that they had smoked three bowls of marijuana that night. Officer Drummond inquired about the Valium in his system, and Mr. Vedner replied that it was not Valium, but validly prescribed Xa-nax that he used. When the officer mentioned that the lab report reflected the presence of cocaine, Mr. Vedner stated that it had been probably three weeks prior to the accident since he used this drug. A short time later, however, he indicated that it was possible that he had used cocaine the day of, or the day prior to, the accident.
During the course of the third interview, Officer Drummond gave Mr. Vedner some misinformation about the cause of the accident and about the taillights of the van Mr. Vedner had crashed into. Upon being asked if he intended to mislead Mr. Ved-ner at that point in the investigation, he responded that he was “using trickery during the interview to see what comes out.”
A week later, the State filed an information charging Mr. Vedner with criminal conduct. Eventually, he was charged by an amended information with DUI manslaughter, vehicular homicide, driving under the influence causing damage or injury, and possession of drug paraphernalia.
Mr. Vedner filed motions to suppress all three statements. While a number of arguments were advanced by the defense, one in particular deserves consideration. Mr. Vedner argued below that since Officer Thomson was in charge of the accident investigation and Officer Drummond was in charge of the homicide investigation, section. 316.066(4), Florida Statutes (1999), would prohibit the use of statements made in the course of an accident investigation, and the interviews should be suppressed.
*1211 Officer Thomson testified that during the first interview, both he and Officer Drummond asked questions. Both officers testified, however, that the accident investigation was ongoing through the last two interviews. Mr. Vedner asserted that since statements that he made were for the purpose of completing a crash report, the final report or statements of his made pursuant to it could not be used as evidence in any criminal trial. Mr. Vedner recognizes, however, that pursuant to State v. Marshall, 695 So.2d 686 (Fla.1997), an officer may testify at trial as to any statement made to the officer by a person involved in a crash if the person’s privilege against self-incrimination was not violated.
The trial court denied the motions to suppress. The judge noted that the first statement was given after Mr. Vedner was advised of his Miranda rights. In addition, the court held that as to the second and third interviews, the statements were non-custodial and should not be suppressed because Mr. Vedner went to the police station of his own free will, was not placed under arrest, and was specifically advised that he was free to go at any time. The court, citing to State v. Johnson, 695 So.2d 771 (Fla. 5th DCA 1997), rev. denied, 705 So.2d 9 (Fla.1997), ruled that since Mr. Vedner was neither in custody nor under arrest, Miranda warnings were not required. The court ruled, however, that evidence concerning Mr. Vedner’s cocaine use would not be allowed.
At trial, Mr. Vedner’s theory of defense was that he was not driving under the influence of alcohol or controlled substances to the extent that his normal faculties were impaired, and that the death of Mr. Daly resulted from the use of a vehicle by Mr. Martinez that had defective taillights. Mr. Vedner’s statements made at all three interviews (with the information concerning his cocaine use redacted), were admitted into evidence. The jury found Mr. Vedner guilty as charged. Mr. Ved-ner was not sentenced for the vehicular homicide, but received a lengthy prison term for the other charges. This appeal followed.
LEGAL ANALYSIS
Subsections 316.066(1) and (2), Florida Statutes (1999), require the driver of a vehicle that has been involved in an accident to make a written report of the crash, if the accident involves bodily injury or death of any person or property damage of at least $500. Because the driver is required to make this report, subsection (4) of the statute excludes the report and statements made to law enforcement for the purpose of completing the crash report from use as evidence at trial in any civil or criminal proceeding. The statute provides, in pertinent part:
(4) Except as specified in this subsection, each crash report made by a person involved in a crash and any statement made by such person to a law enforcement officer for the purpose of completing a crash report required by this section shall be without prejudice to the individual so reporting. No such report or statement shall be used as evidence in any trial, civil or criminal. However, subject to the applicable rules of evidence, a law enforcement officer at a criminal trial may testify as to any statement made to the officer by the person involved in the crash if that person’s privilege against self-incrimination is not violated.
The intention of the Legislature in adopting subsection (4) was to encourage true and uninhibited reports of accidents, the ultimate goal being to make highways safer. See Department of Highway Safety & Motor Vehicles v. Perry, 702 So.2d 294 *1212 (Fla. 5th DCA 1997). Its purpose is to promote a truthful reporting of the facts surrounding the accident, while relieving persons involved from incrimination for their compliance with the law. See Perez v. State, 630 So.2d 1231 (Fla. 2d DCA 1994); Hoctor v. Tucker, 432 So.2d 1352 (Fla. 5th DCA 1983). The statute prohibits the use of statements made by persons involved in accidents in order to avoid violation of the Fifth Amendment privilege against self-incrimination. See State v. Norstrom, 613 So.2d 437, 440 (Fla.1993); Brackin v. Boles, 452 So.2d 540, 544 (Fla.1984).
The application of these principles has generated a significant number of appellate opinions. Norstrom is of particular interest because it summarizes the interplay between section 316.066 and the Fifth Amendment. In that case, the defendant voluntarily made statements to law enforcement officers after he had been read his Miranda rights. He had not been advised that he had to answer questions pertaining to the accident. His statements were made, however, while the police officer was involved in the accident investigation phase, as opposed to the criminal investigation phase. The supreme court held that the statements were voluntary and that there was no Fifth Amendment violation, saying that:
[W]e emphasize that the privilege granted under section 316.066 is applicable if no Miranda warnings are given. Further, if a law enforcement officer gives any indication to a defendant that he or she must respond to questions concerning the investigation of an accident, there must be an express statement by the law enforcement official to the defendant that “this is now a criminal investigation,” followed immediately by Miranda warnings, before any statement by the defendant may be admitted. (Emphasis supplied).
Norstrom, 613 So.2d at 440-41; see also State v. Marshall, 695 So.2d 686 (Fla.1997).
From these cases a number of general propositions can be extracted. First, it is clear that statements made pursuant to the requirement to give information for a crash report required by section 316.066 may not be used as evidence in civil, criminal or administrative proceedings. See Perry; Department of Highway Safety & Motor Vehicles v. Corbin, 527 So.2d 868 (Fla. 1st DCA), rev. denied, 534 So.2d 399 (Fla.1988). Second, if during the course of a vehicular accident investigation a law enforcement officer seeks to elicit statements of a person who has been given “any indication” that he or she is required to give accident information, the officer must advise the person of his or her Miranda rights. Under those circumstances only statements made after the advisement of rights may subsequently be used in civil or criminal trials, or administrative proceedings. See Marshall; Norstrom. For other law enforcement encounters associated with vehicular accidents, however, the usual rules and precepts associated with Miranda seem to apply. See, e.g., Cummings v. State, 780 So.2d 149 (Fla. 2d DCA 2000), rev. denied, 796 So.2d 536 (Fla.2001); State v. Evans, 692 So.2d 305 (Fla. 4th DCA 1997).
APPLICATION OF LAW TO FACTS
The statements given by Mr. Ved-ner to law enforcement officers at the initial interview were voluntarily made after he was advised of his Miranda rights and were, therefore, admissible against him. Although Mr. Vedner makes a number of arguments seeking to exclude this evidence, we find them to be without merit.
The second interview was non-custodial and voluntary. Mr. Vedner was *1213 asked to come to the police station, and he did so voluntarily. Although he was not readvised of his Miranda rights, Mr. Vedner was told that he could leave at any time, and that he was not under arrest. He thereafter made statements that were introduced against him in the criminal trial. We have searched the record thoroughly for “any indication” that Mr. Vedner was told that he was required to answer the questions of the law enforcement officers, but find none. What is troubling, of course, is that the interview was conducted, at least in part, in connection with the accident investigation. This fact alone, however, does not under Nor-strom and Marshall vitiate the admissibility of his statements.
Subsection 316.066(4) provides that no crash report or statement made to a law enforcement officer for completing a crash report shall be used as evidence in any trial. As noted, however, that subsection specifically permits a law enforcement officer to testify in a criminal trial about statements made to the officer by a person involved in a crash, provided the person’s privilege against self-incrimination is not implicated.
As there was no indication that Mr. Ved-ner was advised or believed that he was required to provide the information sought by the law, enforcement officers, and as the interview was non-custodial and voluntary, we conclude that statements made to the officers were properly introduced into evidence at his criminal trial, despite the failure of the officers to warn Mr. Vedner under Miranda. See Cummings; State v. Johnson, 695 So.2d 771, 774 (Fla. 5th DCA 1997). In this instance, Mr. Vedner’s privilege against self-incrhnination was not violated.
The third interview, however, is problematic. Mr. Vedner specifically inquired about the reasons for the additional questions, and he was told that it was for the accident investigation, not a criminal investigation. Here, there was an “indication” that he was required to answer the questions, and he should have been advised under Miranda,[2] We conclude that the failure to warn Mr. Vedner under Miranda prior to eliciting the statements that were used against him in a criminal trial violated his right against self-incrimination. It was error, therefore, to allow the jury to hear and consider those statements.
HARMLESS ERROR ANALYSIS
The United States Supreme Court has recognized that not all constitutional errors are deemed harmful. Rather some constitutional errors are insignificant in a particular case setting, and may be deemed harmless and not require an automatic reversal. See Oregon v. Elstad, 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985); Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).
In Florida, for an error to be harmless, the reviewing court must consider the entire record and determine that there is no reasonable possibility that the error contributed to the conviction. See State v. DiGuilio, 491 So.2d 1129 (Fla.1986). In the present case, the statements made in connection with the improper third interview were largely repetitive of the those made in connection with the valid first two interviews. Indeed, the major new revelation contained in the third interview concerned Mr. Vedner’s use of *1214 cocaine, and that information was deemed inadmissible by the trial judge.
In circumstances where statements made inadmissible by Miranda are cumulative of validly obtained statements, the courts have generally determined upon a harmless error analysis that a reversal is unnecessary. See, e.g., United States v. Deaton, 468 F.2d 541 (5th Cir.1972), cert. denied, 410 U.S. 934, 93 S.Ct. 1386, 35 L.Ed.2d 597 (1973); Davis v. State, 692 So.2d 943 (Fla. 5th DCA 1997). We conclude, as well, upon a review of the entire record, that the error in-admitting the third interview into evidence was harmless.
We have considered the other matters raised by Mr. Vedner and find them to be non-meritorious.
AFFIRMED.
PETERSON and ORFINGER, JJ„ concur.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. Beyond this, we are concerned about the use of "trickery" by the officers to induce Mr. Vedner to make incriminating statements.