DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**STATE OF FLORIDA,**
Appellant,

v.

**ROBIN BENDER,**
Appellee.

No. 4D21-2539

[January 4, 2023]

Appeal from the County Court for the Seventeenth Judicial Circuit, Broward County; Ginger Lerner-Wren, Judge; L.T. Case No. 19-23295MU10A.

Ashley Moody, Attorney General, Tallahassee, and Jessica L. Underwood, Assistant Attorney General, West Palm Beach, for appellant.

Jacob A. Cohen of Law Offices of Jacob A. Cohen, PLLC, Boca Raton, for appellee.

KUNTZ, J.

Robin Bender was charged with one count of Driving under the Influence in violation of section 316.193(1), Florida Statutes (2019) and section 316.1934(1), Florida Statutes (2019). The county court granted Bender's motion to suppress certain statements made during her arrest after concluding the statements were obtained in violation the Supreme Court's directive in *Miranda v. Arizona*, 384 U.S. 436 (1966). The court also suppressed Bender's arrest based on a lack of probable cause. The State appeals the county court's order suppressing evidence and suppressing the arrest. We reverse on both issues.

*Background*

*i.   The Crash Investigation, DUI Investigation, and Arrest*

A Florida Highway Patrol officer responded to a crash on the entrance ramp of the interstate from Oakland Park Boulevard. The officer assigned to investigate the crash approached the driver's side of the vehicle and

found Bender in the driver's seat. The officer asked Bender if she was okay, and Bender responded that she was shaken up. The officer concluded the crash was a single-vehicle crash during which Bender's vehicle ran off the road, hit a tree, and remained on the tree. Bender was the only passenger in the vehicle.

The officer spoke with Bender while she was inside the vehicle, as she was assisted out of it, and when she was outside. The officer had Bender sit on the ground for her own safety while the officer conducted the crash investigation because Bender could not stand. Bender cooperated with the officer throughout the crash investigation, but the officer never told Bender she had to respond to questioning. Nor did the officer read Bender her *Miranda* rights during the crash investigation.

As the officer questioned Bender about the crash, the officer "noticed that [Bender's] eyes were red and glossy. [Bender] spoke with a slow pace and she was slow to recall." The officer observed these things while Bender was both inside and outside the vehicle. The officer then turned on her vehicle's dash cam video and called Bender to come stand in front of the vehicle. Bender was not restrained, nor was she free to leave. But the officer did not tell Bender that she was not free to leave.

The officer told Bender that the crash investigation was complete and that the officer was starting a DUI investigation. Bender acknowledged that she understood the officer was conducting a DUI investigation. Bender told the officer she drank alcohol, but that she did not feel she had drank a lot. The officer asked "[h]ow many did you drink? Approximately," and Bender replied "[o]ne."

The officer then notified Bender of the factors that led the officer to open the DUI investigation: the smell of alcohol on her breath, her car running off the road and hitting a tree, and her swaying and unbalance as she walked after exiting the car. Bender agreed to participate in field sobriety exercises and stated "I'm not going to lie. I had a couple."

The officer explained to Bender that for both of their safety, the officer would transport Bender to a nearby parking lot where the officer would conduct the exercises. The officer never told Bender that she had to get in the car, nor did the officer physically escort Bender to the car.

While in the officer's car on the way to the parking lot, Bender stated "Oh, God. I'm so stupid. I'm so stupid." The officer did not respond directly to Bender. Instead, the officer was silent and, shortly after, initiated a new conversation with Bender about where she had been

travelling. Bender confirmed she was returning to her home in Boca Raton but could not explain why she was traveling in the wrong direction.

After conducting the field sobriety exercises, the officer arrested Bender and placed her in the back of the patrol car. The officer did not read Bender her *Miranda* rights but did ask Bender to submit to a breath test and read implied consent to her.

### *ii. Bender's Motion to Suppress*

Bender moved to suppress the incriminating statements she made to the officer because of Florida's accident report privilege, section 316.066(4), Florida Statutes (2019), and because the officer had not read Bender her *Miranda* rights after the officer had concluded the crash investigation.

At a hearing on the motion, the State asked Bender to clarify the scope of her motion because the motion did not specify any particular statements to suppress. In response, counsel for Bender stated that none of Bender's statements made during the crash investigation should be admitted. The court interjected:

> I think that what Counsel is saying is that the legal issues that the case raises may actually be cascading in that it's not limited to statements per se but looking at it more through a broader lens in terms of, you know, the legality of the ultimate arrest based on various issues. Is that what you're saying?

The State later admitted the officer's dash cam video into evidence. When Bender's counsel asked the officer why she questioned Bender about where she lived, the State stipulated to the suppression of all statements from the moment when the officer began questioning Bender about where she lived until the moment that the officer parked in the parking lot.[1]

---

[1] We accept the State's stipulation for purposes of this appeal. But we note that, in the context of a DUI investigation, a plurality of the United States Supreme Court has "held that responses to questions such as name, address, height, weight, eye color, age, and date of birth fell within a 'routine booking question' exception to *Miranda* 'which exempts from *Miranda*'s coverage questions to secure the biographical data necessary to complete booking or pretrial services.'" *Tobiassen v. State*, 213 So. 3d 1045, 1047–48 (Fla. 4th DCA 2017) (quoting *Pennsylvania v. Muniz*, 496 U.S. 582, 601 (1990)).

3

During closing arguments, the State again said it would concede that some of Bender's statements made in response to the officer's questioning while she was inside the car were made while she was in police custody and should be suppressed. But the State argued other statements made by Bender were spontaneous statements. Those spontaneous statements included Bender acknowledging that she drank alcohol before driving: "I'm not going to lie. I had a couple," and "Oh God. I'm so stupid. I'm so stupid."

The county court found that based on the "totality of the circumstances," Bender was not free to leave when the officer informed Bender that the officer needed to conduct the DUI investigation. The court found Bender's detention in the patrol vehicle and removal from the crash scene was "highly intrusive and tantamount to a 'de facto arrest' in violation of defendant's Fourth Amendment Rights." The county court also found that the officer had to read Bender her *Miranda* rights as soon as the crash investigation turned into a criminal investigation. Based on these conclusions, the county court suppressed Bender's statements to the officer and suppressed her arrest based on a lack of probable cause.

*Analysis*

i. *Using Bender's Pre-Arrest Statements Does Not Violate Miranda*

The State argues that Bender's statements to the officer before she was placed in the patrol car and one statement made inside the car are admissible because Bender was not yet in custody. Bender responds that the officer had an affirmative legal duty to read Bender her *Miranda* rights as soon as the crash investigation ended and the criminal investigation began.

The accident reporting privilege Bender relies on is designed to protect the right against self-incrimination. Sections 316.066(1) and (2), Florida Statutes (2019), require the driver of a vehicle involved in an accident to report the accident. To avoid violating the Fifth Amendment, section 316.066(4) "prohibits the use of communications 'made by persons involved in accidents.'" *Brackin v. Boles*, 452 So. 2d 540, 544 (Fla. 1984).

Bender argues that the officer's failure to read Bender her *Miranda* rights when the crash investigation ended and the DUI investigation began renders all statements inadmissible. We disagree that such a bright line rule applies.

4

The Fifth District has explained that, generally, the interplay between the accident reporting privilege and the Fifth Amendment can result in three solutions. *Vedner v. State*, 849 So. 2d 1207, 1212 (Fla. 5th DCA 2003). First, statements made "pursuant to the requirement to give information for a crash report required by section 316.066 may not be used as evidence in civil, criminal or administrative proceedings." *Id.* (citation omitted). Second, if during an accident investigation "a law enforcement officer seeks to elicit statements of a person who has been given 'any indication' that he or she is required to give accident information, the officer must advise the person of his or her *Miranda* rights." *Id.* (citations omitted). Third, "[f]or other law enforcement encounters associated with vehicular accidents, however, the usual rules and precepts associated with *Miranda* seem to apply." *Id.* (citations omitted).

The officer had announced the criminal DUI investigation was underway when Bender made the statements at issue. So this was no longer a crash investigation required by section 316.066 and was an investigation to which "the usual rules and precepts associated with *Miranda* seem to apply." *Id.* (citations omitted). We conclude the officer's failure to immediately advise Bender of her *Miranda* rights when the officer announced a DUI investigation was commencing does not render Bender's later statements per se inadmissible. Instead, we must "focus[] on whether [Bender's] Fifth Amendment rights were violated." *State v. Norstrom*, 613 So. 2d 437, 440 (Fla. 1993).

In *Miranda*, the Supreme Court "addressed the problem of how the privilege against compelled self-incrimination guaranteed by the Fifth Amendment could be protected from the coercive pressures that can be brought to bear upon a suspect in the context of custodial interrogation." *Berkemer v. McCarty*, 468 U.S. 420, 428 (1984) (citing *Miranda*, 384 U.S. at 436). *Miranda* "established four warnings that are required prior to questioning when a person has been 'taken into custody or otherwise deprived of his freedom of action in any significant way.'" *Morris v. State*, 212 So. 3d 383, 384–85 (Fla. 4th DCA 2017) (quoting *Stansbury v. California*, 511 U.S. 318, 322 (1994)).

But "[t]he safeguards provided by *Miranda* apply only if an individual is in custody and subject to interrogation. Where either the custody or interrogation prong is absent, *Miranda* does not require warnings." *Gordon v. State*, 213 So. 3d 1050, 1052 (Fla. 4th DCA 2017) (quoting *Timmons v. State*, 961 So. 2d 378, 379 (Fla. 4th DCA 2007)).

5

So we focus on whether Bender was in custody and being interrogated when the statements were made. Those statements can be grouped into two categories: (1) Bender's on-scene statements admitting she drank, claiming she had only "one" drink, and then admitting she "had a couple"; and (2) her statements made while being transported to the parking lot for the field sobriety exercises. The State stipulated to the suppression of all but one of the statements during that transport. The State challenges only the county court's suppression of Bender's unsolicited statement, "Oh God. I'm so stupid. I'm so stupid."

Our analysis is framed by the United States Supreme Court's decision in *Berkemer*, 468 U.S. at 420. In *Berkemer*, the Supreme Court answered two questions. First, the state argued that *Miranda* should not apply when the police arrest a person for committing a misdemeanor traffic offense. *Id.* at 429-33. The Supreme Court rejected that argument and concluded that the "purposes [of *Miranda*] are implicated as much by in-custody questioning of persons suspected of misdemeanors as they are by questioning of persons suspected of felonies." *Id.* at 433.

Second, the Supreme Court was "obliged to address a second issue concerning the scope of our decision in *Miranda*: whether the roadside questioning of a motorist detained pursuant to a routine traffic stop should be considered 'custodial interrogation.'" *Id.* at 435. The Court explained that "[f]idelity to the doctrine announced in *Miranda* requires that it be enforced strictly, but only in those types of situations in which the concerns that powered the decision are implicated." *Id.* at 437.

That left the Supreme Court to determine whether *Berkemer* presented a situation in which the concerns that powered *Miranda* were implicated. In *Berkemer*, the officer pulled over the defendant and forced him to get out of his vehicle. *Id.* at 423. Because the defendant was having difficulty standing, the officer concluded that he would be charged with a traffic offense and that his freedom to leave the scene was terminated. *Id.* But before taking the defendant into custody, the officer asked the defendant to perform a field sobriety test. *Id.* The officer also asked the defendant whether he had used any intoxicants, a question the defendant answered. *Id.* After the defendant answered the questions, the officer arrested him. *Id.* The Supreme Court found "nothing in the record that indicates that [the defendant] should have been given *Miranda* warnings at any point prior to the time [the officer] placed him under arrest." *Id.* at 441.

The Fifth District relied on *Berkemer* when it addressed the same issue in *State v. Burns*, 661 So. 2d 842 (Fla. 5th DCA 1995). In *Burns*, the court explained that it was just a routine traffic stop. *Id.* at 844. The defendant

6

"was stopped and was asked for his license and registration and to perform field sobriety tests. The stop was short (eleven minutes), occurred in a public area, only one officer was present, and the tests were simple." *Id.* The Fifth District concluded that "there [were] no factors which would take this case outside the holding in *Berkemer*." *Id.*

Like the defendants in *Berkemer* and *Burns*, Bender was not subject to the restraints of a formal arrest when she made the statements the county court suppressed. And most of the statements were spontaneous without any prompting from the officer. Just as the defendants' statements were admissible in *Berkemer* and *Burns*, Bender's statements are admissible here. This includes Bender's statements on the side of the interstate and her statement, "Oh God. I'm so stupid. I'm so stupid," made while traveling to the parking lot. The county court erred when it suppressed those statements. The State stipulated to the suppression of the remaining statements which Bender had made while traveling to the parking lot.

### ii. The Court's Suppression of Bender's Arrest Exceeded the Scope of Bender's Request

We also reverse for another reason: the State was not on notice that Bender was seeking to suppress the arrest.

Florida Rule of Criminal Procedure 3.190(g)(2) requires a defendant to clearly state in a motion to suppress "the particular evidence sought to be suppressed, the reasons for suppression, and a general statement of the facts on which the motion is based." Rule 3.190(h)(2) requires the same for motions by a defendant to suppress a confession or admission.

Bender sought to suppress her statements to the officer, but she did not challenge the arrest. Yet, the county court suppressed the arrest. The county court's suppression of Bender's arrest exceeded the scope of Bender's request and did so without notice to the State. Suppressing the arrest without notice to the State requires reversal of the suppression order. *See, e.g., State v. Christmas*, 133 So. 3d 1093, 1096 (Fla. 4th DCA 2014).

### Conclusion

The county court's order suppressing Bender's statements and her arrest is reversed, and the case is remanded for further proceedings.

*Reversed and remanded.*

7

CIKLIN and LEVINE, JJ., concur.

\* \* \*

*Not final until disposition of timely filed motion for rehearing.*