673 So.2d 57 (1996)
STATE of Florida, Appellant/Cross-Appellee
v.
Keith A. TAGNER, Appellee/Cross-Appellant.
No. 94-3514.
District Court of Appeal of Florida, Fourth District.
March 20, 1996.
*58 Robert A. Butterworth, Attorney General, Tallahassee, and Sarah B. Mayer, Assistant Attorney General, and Ellen D. Roberts, Assistant State Attorney, West Palm Beach, for appellant/cross-appellee.
Richard W. Springer and Catherine Mazzullo of Springer & Springer, Palm Springs, and M. Lee Thompson of M. Lee Thompson, P.A., West Palm Beach, for appellee/cross-appellant.
PARIENTE, Judge.
In a prosecution for DUI manslaughter, the state appeals a non-final order granting defendant's motion to suppress blood samples indicating a cocaine level of .34 milligrams per liter (mg/l). Because the amount of cocaine detected in this case was not an "unquantifiable" trace, we reverse and remand for the trial court to determine in accordance with State v. McClain, 525 So.2d 420 (Fla.1988), whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. See § 90.403, Fla.Stat. (1995).
The state charged defendant with DUI manslaughter alleging that defendant was in control of a motor vehicle while under the influence of alcoholic beverages, chemicals or any substance controlled under Chapter 893, to the extent that his normal faculties were impaired or he had a blood alcohol level of.08% or higher. See § 316.193, Fla.Stat. (1993). By defendant's own admission, upon realizing that he was in no condition to drive, defendant backed his pick up truck toward a parking spot behind the bar where he had been drinking. While in reverse, defendant's truck collided with the pedestrian victim, dragging her body 80 feet, causing her fatal injuries.
Defendant's blood alcohol level was .10% approximately 45 minutes to one hour after the accident.[1] In addition, the amount of cocaine in defendant's blood, .34 mg/l, was more than a trace amount. Defense expert Debra Marsh, associate professor of neurology, testified that .34 mg/l is equivalent to a surgical dose given to eliminate pain. Additionally, at blood levels of cocaine between .1 mg/l and .3 mg/l, people report the "subjective high" associated with cocaine. Marsh testified that, unlike for alcohol, there is no body of information that allows one to correlate the effect of blood levels of cocaine with levels of functional impairment.
Thomas Carroll, chief forensic toxicologist of Palm Beach County, testified for the state. He explained that a trace amount of cocaine is below .05 mg/l. Thus, both experts agreed that .34 mg/l of cocaine is not a trace amount. Carroll described the general euphoric feeling resulting from an increase in dopamine in the brain associated with cocaine use. More so than alcohol, cocaine is a disinhibiting substance affecting a person's normal thought process. Because inhibition is decreased, critical judgment is impaired, an effect enhanced by mixing alcohol with cocaine. Carroll also testified that defendant's blood level of cocaine at the time of the accident would have been higher than at the time defendant's blood was drawn. Carroll concluded that defendant was under the influence of cocaine and alcohol at the time of the accident.[2]
*59 While rejecting defendant's argument that there was no consent or probable cause permitting the police to draw blood, the trial court suppressed the cocaine based on finding "no measurable effects as set forth in West." West v. State, 553 So.2d 254 (Fla. 4th DCA 1989), disapproved on other grounds, State v. Norstrom, 613 So.2d 437 (Fla.1993). We find the facts in this case distinguishable from West.
In West, the state prosecuted the defendant only for alcohol-based DUI manslaughter. However, the state sought to introduce evidence that the defendant was also under the influence of a trace amount of valium. The expert testified that the trace amount of valium had no "measurable effect" on the defendant's driving. This court concluded both that the evidence had no probative value or relevance to the charge of driving under the influence of alcohol and that it was unduly prejudicial.
In West, we relied on State v. McClain, 508 So.2d 1259 (Fla. 4th DCA 1987), approved, 525 So.2d 420 (Fla.1988). In McClain, this court affirmed the trial court's exclusion of evidence that there was a trace of cocaine in the defendant's blood. The expert testified that he could not determine when the cocaine was ingested or whether its presence affected the defendant's driving, let alone the extent of its effect. Id. at 1261. According to a chemist from the county medical examiner's office, the amount of cocaine was so small that the mass spectrometer, a scientific instrument used for qualitative analysis of chemicals, did not record its presence. We concluded that there appeared to be no likelihood that the defendant's faculties could have been affected by the amount of cocaine detected and "[i]f that is correct, the evidence arguably is not even relevant." Id.
In State v. Weitz, 500 So.2d 657 (Fla. 1st DCA 1986), clarified, McClain, 525 So.2d at 423, the first district reversed a trial court order suppressing evidence of drugs found on urinalysis because its effect could not be linked quantitatively to impairment. The first district held that the evidence was admissible because the existence of drugs went to the element of "under the influence" necessary for a DUI prosecution. Id. at 659. "The extent of that influence is a separate element, provable by other evidence, including the observations of the police officers and the fact that appellee caused the accident." Id.
Our supreme court in McClain resolved the apparent conflict between this court's decision in McClain and the first district's decision in Weitz. It distinguished the "unquantified" effect of the drugs in Weitz from the "unquantifiable" trace amount in McClain. Of significance to the case before us, our supreme court explained that the district court in Weitz was "correct when it rejected the trial court's conclusion that it was necessary for the toxicologist to estimate the degree of impairment caused by the existence of the drugs." McClain, 525 So.2d at 423.
This observation is important because the experts here concede that they could not provide a quantitative range of impairment correlating to the cocaine in defendant's blood because this body of information does not exist in a fashion similar to the research on alcohol. If the inability to quantify the degree of impairment was a basis for disallowing evidence of cocaine impairment, such evidence would necessarily be suppressed in every case.
Our supreme court in McClain focused on the test for admissibility of relevant evidence, noting that even a trace amount of cocaine could be relevant pursuant to section 90.401. Id. at 421. As our supreme court observed, "the same item of evidence may be admissible in one case and not in another, depending upon the relation of that item to the other evidence." Id. at 422. It reconciled the decisions in McClain and Weitz in this manner:
In both cases, it could be said that the prejudicial impact of permitting the jury to hear that the defendant had taken illegal drugs was equal but that it was the difference in probative value which tipped the scales. In Weitz, the defendant's low blood alcohol test belied the other evidence of his intoxication. Thus, the presence of even a small amount of drugs in the defendant's urine was significant because it provided an explanation for his impaired conduct. In the instant case, McClain's blood *60 alcohol level substantially exceeded the figure necessary to raise a presumption of impairment. Therefore, evidence of a trace amount of cocaine in McClain's blood added little to the state's proof of intoxication.
Id. at 423.
The state's inability here to show a specific measurable effect of the cocaine on defendant did not per se render the evidence inadmissible. Unlike West and McClain, the amount of cocaine was more than a trace and was quantifiable. Unlike West and McClain, the testimony of the state's expert established the probative value of the cocaine on the issue of "under the influence." Moreover, unlike West, this is a prosecution for driving under the influence of alcoholic beverages or a controlled substance.
The state contends that the evidence is also probative because the level of cocaine is not insignificant and the blood alcohol level is comparatively low in light of the other observed evidence of defendant's impairment. Thus, defendant's impaired state at the time of the accident may have resulted from the combined effect of both alcohol and cocaine.
However, even if probative, our supreme court recognized in McClain that such evidence is properly excludable under section 90.403 if the "probative value is substantially outweighed by the danger of unfair prejudice." 525 So.2d at 421. This involves a balancing test which must be performed by the trial court in the exercise of its discretion with the proviso that:
Certainly, most evidence that is admitted will be prejudicial to the party against whom it is offered. Section 90.403 does not bar this evidence; it is directed at evidence which inflames the jury or appeals improperly to the jury's emotions.
Id. at 422 (quoting 1 C. Ehrhardt, Florida Evidence § 403.1 at 100-03 (2d ed. 1984)). Likewise, the fact that evidence of illegal drugs may prejudice some prospective jurors is not in itself sufficient reason to exclude the evidence. See Weitz, 500 So.2d at 659.
The trial court here did not balance the probative value of the evidence of cocaine against its prejudicial effect as it must do to determine admissibility. When a trial court performs this balancing, we give considerable deference to its exercise of discretion. See McClain, 525 So.2d at 423; Henry v. State, 613 So.2d 429 (Fla.1992), cert. denied, ___ U.S. ___, 114 S.Ct. 699, 126 L.Ed.2d 665 (1994). By basing its decision to exclude the evidence solely on a determination of "no measurable effect," the trial court misinterpreted our holding in West and the subsequent supreme court decision in McClain. Accordingly we reverse and remand for further proceedings consistent with our opinion.
FARMER, J., concurs.
STONE, J., concurs specially with opinion.
STONE, Judge, concurring specially.
I concur in the majority opinion but would add a comment that the purpose of applying the balancing test is not to test the sufficiency of the evidence, with a view toward excluding relevant, albeit prejudicial, proof that Appellant had been taking drugs prior to the accident. Rather, the balancing test is used to determine whether such evidence should be excluded because the state's case is so strong, without regard to that evidence, that its introduction serves no useful purpose other than as a prejudicial influence.
NOTES
[1] According to expert testimony, defendant's blood alcohol level at the time of the accident would have been in the range of .06% to .12%, depending on defendant's rate of absorption pre-accident and post-accident. A blood alcohol level of .08% or more is prima facie evidence that the person was under the influence of alcoholic beverages to the extent that his normal faculties were impaired. See § 316.1934(2)(c), Fla.Stat. (1993); State v. Rolle, 560 So.2d 1154 (Fla.), cert. denied, 498 U.S. 867, 111 S.Ct. 181, 112 L.Ed.2d 144 (1990).
[2] There are three material elements of a DUI charge: 1) that the defendant was driving or in actual physical control of the vehicle; 2) that the defendant was under the influence of an alcoholic beverage or a controlled substance and 3) that the defendant was affected to the extent that his normal faculties were impaired. § 316.193, Fla. Stat. (1993); State v. Weitz, 500 So.2d 657, 658 (Fla. 1st DCA 1986), clarified, State v. McClain, 525 So.2d 420, 423 (Fla.1988).