ON REMAND FROM THE SUPREME COURT OF FLORIDA
PER CURIAM.
James Richard Cooper appeals his convictions for two counts of lewd molestation and four counts of sexual battery on a person in familial custody, raising three issues for review. This case is back before this court on the limited issue of whether the trial court’s error in allowing the State to introduce testimony of uncharged incidents of sexual activity was harmless. Because our renewed review of the full record confirms our prior conclusion that the error was harmless in this case, we affirm.
The State charged Cooper with two counts of lewd molestation and four counts of sexual battery on a person in familial custody for acts that occurred between him and the victim over the course of approximately four years. Each count charged Cooper with engaging in a specific type of improper act, and each count alleged a range of dates during when the improper conduct occurred. However, despite the range of dates alleged in the information, each count alleged only a single improper act.
On appeal, Cooper raised three grounds for reversal.[1] In ground one, Cooper argued that the trial court had erred by permitting the State to present evidence of numerous instances of uncharged sexual conduct between Cooper and the victim. In the original appeal, we agreed that the *265 admission of this evidence was erroneous. See Cooper v. State, 13 So.3d 147, 149 (Fla. 2d DCA 2009). Nevertheless, we affirmed Cooper’s convictions, finding that the error in admitting this evidence was harmless. Id. In doing so, we stated:
As to whether the error of allowing the State to present evidence of extensive abuse did or did not contribute to the verdict, we note that if the case had been presented as six distinct acts as charged, the State’s presentation of its case would have necessarily been different. On the other hand, the jury heard a taped statement where Cooper admitted engaging in sexual acts with the victim. Because the taped statement is strong evidence of Cooper’s guilt, we conclude that the error of allowing the State to present evidence of multiple sexual acts did not affect the verdict and was harmless in this case. See State v. DiGuilio, 491 So.2d 1129 (Fla.1986).

Id.

Cooper appealed to the supreme court, asserting that this court had properly cited but not properly applied the harmless error test set forth in State v. DiGuilio, 491 So.2d 1129 (Fla.1986). The supreme court agreed, stating:
Although the Second District cited DiGuilio, it failed to follow the DiGuilio standard when it relied on what it deemed the “strong evidence of Cooper’s guilt.” Id. As we have explained, the applicable test “is not a sufficiency-of-the-evidence, a correct result, a not clearly wrong, a substantial evidence, a more probable than not, a clear and convincing, or even an overwhelming evidence test.” DiGuilio, 491 So.2d at 1139. Likewise, it is not a strong evidence test. Rather, the test is “whether there is a reasonable possibility that the error affected the verdict.” Id.; see also Ventura v. State, 29 So.3d 1086, 1091 (Fla.2010) (quashing and remanding a district court’s decision when the harmless error analysis focused on overwhelming evidence of guilt because it “does not address a proper [DiGuilio ] analysis and does not discuss whether there is a reasonable possibility that the ... error affected the verdict”).
Cooper v. State, 43 So.3d 42, 43 (Fla.2010). The supreme court then remanded the case to this court for us to reconsider whether the trial court’s error in admitting the State’s evidence of uncharged acts is harmless under the standard enunciated in DiGuilio.
In DiGuilio, the supreme court explained the harmless error test as follows:
The harmless error test, as set forth in Chapman and progeny, places the burden on the state, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction. See Chapman [v. California], 386 U.S. [18] at 24, 87 S.Ct. [824] at 828, 17 L.Ed.2d 705 [ (1967) ]. Application of the test requires not only a close examination of the permissible evidence on which the jury could have legitimately relied, but an even closer examination of the impermissible evidence which might have possibly influenced the jury verdict.
DiGuilio, 491 So.2d at 1138. Moreover, “[t]he focus [of the test] is on the effect of the error on the trier-of-fact. The question is whether there is a reasonable possibility that the error affected the verdict.” Id. at 1139. Following this explanation of the harmless error test, the court examined the admissible evidence of DiGuilio’s guilt and the nature of the inadmissible evidence. It found that the admissible *266 evidence was “not clearly conclusive,” in large part because there were plausible explanations for DiGuilio’s conduct that were equally consistent with his innocence. Id. at 1138. It also found that the inadmissible evidence constituted a de facto comment on DiGuilio’s right to remain silent because it simply highlighted for the jury the fact that DiGuilio was not testifying at trial and had not previously offered any plausible explanation for his presence in the midst of a drug deal. Id. Thus, because the admissible evidence was not conclusive and the inadmissible evidence constituted an improper reference to DiGuilio’s constitutional right to remain silent, the court found that the error was not harmless.
Turning to this case, we find that, unlike in DiGuilio, the admissible evidence against Cooper was conclusive. The victim clearly testified that he and Cooper had engaged in at least one act of each type charged by the State during the period of time covered by the information. More important, the State introduced Cooper’s taped statement, in which he specifically admitted to engaging in at least one act of each type charged by the State with the victim. While there were some discrepancies between the victim’s testimony and Cooper’s statement, those discrepancies went to issues such as the time the acts had started and who initiated the contact — not to whether the acts had occurred at all. And while Cooper did introduce evidence to show that the victim had once denied that any sexual acts had occurred to an investigator from the Department of Children and Family Services, this evidence conflicted with Cooper’s own taped admission. Therefore, the admissible evidence against Cooper was extremely strong.
As to the inadmissible evidence, the State did introduce evidence that Cooper had repeatedly engaged in this conduct with the victim during a period of about four years even though the information charged only six discrete instances of improper conduct. However, while the State elicited testimony from the victim that these acts had happened “once or twice a week” from the time he was thirteen until he was seventeen, the State’s focus remained primarily on proving the individual acts. In closing, the State argued that the question for the jury was not whether each act happened more than once, but rather whether each of the different acts alleged in the information had occurred at least once. And while the State did, later in its initial closing argument, make reference to the multiple incidents, it made no reference to the repeated nature of the abuse in its rebuttal closing, and it did not make the repeated nature of the abuse a theme in any part of its case.
Considering this evidence in light of the DiGuilio standard, while the State did elicit improper testimony concerning the frequency of the acts by Cooper, we conclude that there is no reasonable possibility that this inadmissible evidence contributed to the verdict.[2] The State charged Cooper with six separate counts of sexual activity. Thus, regardless of the time frame involved or the repeated nature of the abuse, the jury was going to hear evidence of six separate sexual incidents between Cooper and the victim. The victim’s testimony was clear and unequivocal, and Cooper himself admitted to these acts in a taped statement that was played for the jury. Therefore, because on this rec *267 ord there is no reasonable possibility that the erroneously admitted evidence contributed to the jury’s verdict, we find the error harmless and affirm Cooper’s convictions.
Affirmed.
VILLANTI and WALLACE,[3] JJ., and CASE, JAMES R., Associate Senior Judge, Concur.

. Grounds two and three were affirmed by this court without discussion and are not at issue in this proceeding. See Cooper v. State, 13 So.3d 147, 148 (Fla. 2d DCA 2009).

. Our renewed review of the record leads us to believe that the previous panel understood and applied the proper harmless error test but did not properly articulate its analysis in the opinion.