NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

LAWRENCE GUDMESTAD,　　　　　)
　　　　　　　　　　　　　　　　)
　　　　Appellant,　　　　　　　)
　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　)　　Case No. 2D14-3140
　　　　　　　　　　　　　　　　)
STATE OF FLORIDA,　　　　　　　)
　　　　　　　　　　　　　　　　)
　　　　Appellee.　　　　　　　　)
_____ )

Opinion filed December 7, 2016.

Appeal from the Circuit Court for
Sarasota County; Thomas Krug, Judge.

Andrea Flynn Mogensen of Law Office of
Andrea Flynn Mogensen, P.A., Sarasota,
for Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Jonathan P. Hurley,
Assistant Attorney General, Tampa, for
Appellee.


NORTHCUTT, J.

　　　　　　Convicted by a jury of fleeing or attempting to elude a law enforcement

officer and of aggravated assault on a law enforcement officer, Lawrence Gudmestad

raises five issues on appeal.  We conclude that the trial court erred by allowing the

State to "rebut" Gudmestad's nonhearsay statements with his prior convictions.

Accordingly, we reverse Gudmestad's convictions and remand for a new trial.

On the evening of the events giving rise to the charges, Sarasota sheriff's deputies observed a vehicle driving at a high rate of speed. They were able to momentarily stop the vehicle, but the driver sped away. Deputies proceeded to the address of the car's registered owner, Mary Belicki, and discovered the car parked a few blocks away. They found Gudmestad's driver's license lying on the ground next to the driver's door, and they made contact with Belicki, Gudmestad's fiancée. Belicki was surprised that her car was gone, and she told the deputies that she had not given anyone permission to borrow it. After Belicki gave deputies permission to search the home, they discovered Gudmestad hiding in a shower holding a military-style rifle. The deputies quickly exited the house and took up defensive positions.

Gudmestad went into the backyard with the rifle. Deputies heard Gudmestad yelling at Belicki. He called her an "alien bitch" and pushed her toward police telling her to "go join the other aliens and leave me alone." Gudmestad also threatened the deputies, calling them "green aliens" and "green parasites." Gudmestad appeared at the front gate where deputies shot but did not seriously injure him. While paramedics treated Gudmestad, he fought with them, trying to free himself from his restraints and jump off the stretcher. Gudmestad seemed disoriented, and he repeatedly asserted that the paramedics looked like aliens and that he did not want to go into the ambulance, which he thought looked like an alien spacecraft.

A toxicology screen later revealed that, though he had a .03 blood-alcohol level, Gudmestad was not under the effect of any narcotics or psychotropic medications at the time of his arrest. Prior to trial, Gudmestad's counsel filed a notice that he would present an insanity defense. Also, on the motion of defense counsel, experts were

appointed to determine Gudmestad's competence to stand trial. Both experts concluded that Gudmestad suffered from a schizoaffective disorder that preexisted the events of this case. This disorder manifested in a fixed delusion that aliens had infiltrated Earth and disguised themselves among the human population. Gudmestad believed the judge, prosecutor, and jury were aliens. Both experts opined that Gudmestad was not malingering. Nonetheless, one expert ventured that Gudmestad had an adequate understanding of the adversarial nature of trial and the roles of the parties at trial and therefore was competent to proceed. The trial court determined that Gudmestad was competent to stand trial.

The State moved in limine to introduce Gudmestad's prior convictions if the defense elicited any statements regarding aliens. Relying on section 90.806(1), Florida Statutes (2013), the trial court granted the motion, reasoning that because such statements tended to excuse Gudmestad from blame, they were subject to impeachment. The court ruled that if Gudmestad elicited any testimony in which he said, "people are aliens, green aliens, alien machines, bald green aliens, and that Obama has been invaded by aliens," such "exculpatory statements" would open the door to Gudmestad's prior convictions.

During the State's case in chief, it called the deputies and paramedics who had encountered Gudmestad on the night of the offenses. On cross-examination, defense counsel elicited testimony regarding Gudmestad's statements about aliens. The trial court, at the State's request, read Gudmestad's prior convictions for twelve felonies and one crime of dishonesty into the record. In the defense case, both of the

experts who had examined Gudmestad and testified at the pretrial competency hearing opined that, at the time of the offenses, Gudmestad met the legal test of insanity.

Turning first to the State's "impeachment" of Gudmestad with his prior convictions, we review the trial court's evidentiary ruling for abuse of discretion. See McDuffie v. State, 970 So. 2d 312, 326 (Fla. 2007). A trial court abuses its discretion when it bases its ruling "on an erroneous view of the law or on a clearly erroneous assessment of the evidence." Mohler v. State, 165 So. 3d 773, 775 (Fla. 2d DCA 2015) (quoting Masaka v. State, 4 So. 3d 1274, 1279 (Fla. 2d DCA 2009)).

Section 90.806(1) provides: "When a hearsay statement has been admitted in evidence, credibility of the declarant may be attacked and, if attacked, may be supported by any evidence that would be admissible for those purposes if the declarant had testified as a witness." Thus, under this section, "a hearsay declarant is treated as a 'witness' and his or her credibility may be attacked in the same manner as any other witness's credibility." Huggins v. State, 889 So. 2d 743, 756 (Fla. 2004). "A party may attack the credibility of any witness . . . by evidence that the witness has been convicted of a crime if the crime was punishable by death or imprisonment in excess of 1 year . . . ." § 90.610(1), Fla. Stat. (2013); see also 5 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 806.04(2)(b) (Joseph M. McLaughlin ed., 2d ed. 2002) ("A defendant who chooses not to testify but who succeeds in getting his or her own exculpatory statements into evidence runs the risk of having those statements impeached by felony convictions.").

In this case, the trial court's rulings evinced a mistaken understanding of the law. The threshold inquiry was not whether Gudmestad's statements were

exculpatory in nature but whether they were hearsay. Hearsay is any statement by a nontestifying declarant which is being "offered in evidence to prove the truth of the matter asserted." § 90.801(1)(c), Fla. Stat. Defense counsel clearly did not elicit Gudmestad's out-of-court statements in order to prove that the police were aliens. Because defense counsel elicited no hearsay statements, the trial court erred by allowing the State to attack Gudmestad's credibility under section 90.806(1).

When a trial court erroneously admits evidence, we apply a harmless error test to determine whether the error necessitates reversal. "The harmless error test places . . . the burden on the state . . . to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction." Cooper v. State, 68 So. 3d 263, 265 (Fla. 2d DCA 2010) (quoting State v. DiGuilio, 491 So. 2d 1129, 1138 (Fla. 1986)).

Here, Gudmestad's credibility was plainly at issue. Gudmestad never contested his involvement in the events leading to his arrest, but given his extensive history of mental illness, there is a possibility that the jury would have acquitted by reason of insanity. We cannot say that the verdict in this case was not affected by the erroneous admission of Gudmestad's convictions. See Foster v. State, 182 So. 3d 3, 5 (Fla. 2d DCA 2015) (finding harmful error where case turned on credibility and State improperly impeached with prior convictions).

The trial court committed harmful error by allowing the State to rebut Gudmestad's nonhearsay statements with his prior convictions. We accordingly reverse Gudmestad's convictions and remand for a new trial. Prior thereto, however, the trial

court must again assess Gudmestad's competence to proceed. See Fla. R. Crim. P. 3.210(b); Bracero v. State, 10 So. 3d 664, 666 (Fla. 2d DCA 2009) (observing that court has independent duty to inquire into defendant's competence if it has reasonable ground to believe defendant is not competent to proceed).

Because of this disposition, we need not determine whether the trial court erred by finding Gudmestad competent to proceed in the first place. However, we note that competence to proceed in a criminal prosecution requires more than an ability to consult with counsel and understand the adversary nature of the process. The test for whether a defendant is competent to stand trial is "whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding— and whether he has a rational as well as factual understanding of the proceedings against him." Dusky v. United States, 362 U.S. 402, 402 (1960) (emphasis added); see also Fla. R. Crim. P. 3.211(a)(1). Neither party has pointed us to any authority that would help us determine the parameters of what is "rational" for these purposes. Nonetheless, we are skeptical that a defendant who—according to court-appointed mental-health experts—honestly believes that he is being tried by extraterrestrials can be said to have a rational and factual understanding of the proceedings. On remand, the trial court must delve into this aspect of the experts' opinions more deeply and give this factor due consideration when assessing Gudmestad's competence to proceed.

Reversed and remanded with instructions.

CRENSHAW and BLACK, JJ., Concur.