# DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
## FOURTH DISTRICT

**JARED CARIBO,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D2023-2962

[January 14, 2026]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, Martin County; Sherwood Bauer, Jr., Judge; L.T. Case No. 432018CF000583.

Daniel Eisinger, Public Defender, and Erika Follmer, Assistant Public Defender, West Palm Beach, for appellant.

James Uthmeier, Attorney General, Tallahassee, Marcus Russell Kelly II, Assistant Attorney General, West Palm Beach, and Jeanine Germanowicz, Senior Assistant Attorney General, West Palm Beach, for appellee.

FORST, J.

Appellant Jared Caribo appeals his conviction and sentence for burglary of a dwelling following a jury trial.[1] Caribo raises several arguments on appeal. We affirm on all issues but write to address Caribo's allegation that the trial court erred in informing the jury that Caribo had twenty-three felony and five misdemeanor prior convictions involving dishonesty. Caribo challenges the trial court's ruling that defense counsel had, in essence and perhaps inadvertently, "opened the door" to admission of this record (with limiting instructions).

## Background

The backyard of the victim's house was fully enclosed by a six-foot-tall fence. The only entrance from the backyard to the house was a sliding

---

[1] Caribo was acquitted on a petit theft charge.

glass door that opened to the living room, kitchen, and dining room. A master bedroom was accessible from the living room. The victim had a home security surveillance system that featured a camera pointed directly at the sliding glass door. The system was set up to notify the victim's phone when movement occurred in her house or at the glass door. The system provided a live feed and saved the videos of any motion it detected.

While away from the house, the victim received a notification of movement from her security system. She viewed the live feed and saw, in the house, a man whom she did not recognize. The victim sounded an alarm in the house and called 911 to report a break-in. The victim returned home and found police already at the house. The victim did not see any damage to the house, as no windows, doors, or locks were broken. However, the victim saw that her jewelry box on her master bedroom dresser had been opened and two pairs of earrings were missing.

The victim provided police with security system videos, which showed a man wearing shorts, a black T-shirt, a shirt tied around his neck, and gloves. In the videos, the man slides open the glass door from a crouched position, walks into the house, puts his gloves in his pocket, and goes into the master bedroom. He next goes to another area of the house off camera, and soon thereafter exits the house through the glass door and runs away as the alarm activated by the victim commences.

While two officers inspected the house, another officer found Caribo walking in the parking lot of a plaza within walking distance of the victim's house wearing clothing that matched the attire of the man seen on the security video. The officer detained Caribo. Meanwhile, the victim informed the officers, and later testified at trial, that she did not know Caribo and had not given him permission to enter her home. No items from the victim's house, including the earrings, were located. The police later discovered that the shoes that Caribo had been wearing when he was detained matched a footprint found in the victim's house. The footprint was determined not to match shoes owned by the victim or her husband.

The state charged Caribo with burglary of a dwelling and petit theft. At trial, defense counsel did not argue that someone other than Caribo had been the person recorded by the security camera entering the victim's home. Ultimately, the defense conceded Caribo was the person who was filmed entering the home. The defense also did not challenge the victim's assertion that she did not know Caribo and had not invited him to enter the home, nor did the defense argue that the victim's husband knew Caribo.

2

Instead, the defense maintained that the State had not established one element of the burglary of a dwelling charge—an intent to commit a crime inside the dwelling.[2] The defense noted that neither the security system video nor the police search of Caribo indicated that Caribo had the earrings or any other item from the home in his hands or on his person.

On cross-examination, the officer who had encountered Caribo testified that he had patted him down and found no earrings or other jewelry. The officer then had this exchange with defense counsel:

> Q: Okay. So after the interview, you took a picture of the shoe, was there any other things that you did with Mr. Caribo regarding this case?
>
> A: I asked him if he—I believe **I asked him if he had any of the jewelry concealed on him, at the time.** Other than that, I don't believe I did anything else, just speaking to him.
>
> Q: Okay. And did Mr. Caribo act, like, surprised **or did he say he had jewelry?**
>
> A: **He said he didn't have any jewelry on him.**

(Emphasis added).

Following the cross-examination, the prosecutor requested a sidebar conference. The prosecutor noted that defense counsel had admitted Caribo's self-serving hearsay statement ("[h]e said he didn't have any jewelry on him") into evidence through another witness (the investigating officer). Consequently, the State moved the trial court to instruct the jury on the number of Caribo's prior convictions for felonies and misdemeanors involving dishonesty as impeachment evidence pursuant to sections 90.806(1) and 90.610, Florida Statutes (2023). Defense counsel objected, arguing that the danger of unfair prejudice substantially outweighed the probative value of the prior conviction evidence under the balancing test of section 90.403, Florida Statutes (2023).

The trial court ruled in the State's favor, reasoning that "a Defendant not testifying, but obtaining exculpatory information through others by his

---

[2] "The essential elements of burglary are: '(1) entering or remaining in, (2) a structure or conveyance, and (3) with intent to commit an offense therein.'" *Davis v. State*, 736 So. 2d 27, 27 (Fla. 4th DCA 1999) (quoting *State v. Waters*, 436 So. 2d 66, 69 (Fla. 1983)).

3

own statements does subject him to that credibility question," and that appellate courts which had considered the prejudicial effect of prior conviction evidence have concluded such evidence is generally admissible to impeach a declarant's credibility.

The court then informed the jurors that because the defense had introduced Caribo's hearsay statement into evidence, the court was instructing them that Caribo had previously been convicted of twenty-three felonies and five misdemeanors involving dishonesty. The court further instructed the jurors to consider the prior convictions only in assessing the credibility of Caribo's statement, not as substantive evidence of the charged crimes.

Caribo elected not to testify. No witness testified that Caribo was seen, on video or in-person, possessing the victim's jewelry. The State never mentioned Caribo's prior convictions in closing or rebuttal, instead emphasizing the video evidence showing that he "comes in, crouched down" through the back door wearing gloves and runs away when the alarm goes off, as well as the jury instruction allowing the jury to infer criminal intent from his stealthy, surreptitious manner of entry.

The jury convicted Caribo of burglary of a dwelling but acquitted him of theft. This appeal follows.

**Analysis**

We review a trial court's ruling that a declarant can be impeached with the declarant's prior convictions for an abuse of discretion. *See Mathis v. State*, 135 So. 3d 484, 485 (Fla. 2d DCA 2014). "If reasonable [people] could differ as to the propriety of the action taken by the trial court, then the action is not unreasonable and there can be no finding of an abuse of discretion." *Canakaris v. Canakaris*, 382 So. 2d 1197, 1203 (Fla. 1980). "However, the question of whether a statement is hearsay is a matter of law and is subject to de novo review on appeal." *Joseph v. State*, 336 So. 3d 218, 234 (Fla. 2022) (quoting *Tundidor v. State*, 221 So. 3d 587, 598 (Fla. 2017)).

"When a hearsay statement has been admitted in evidence, credibility of the declarant may be attacked and, if attacked, may be supported by any evidence that would be admissible for those purposes if the declarant had testified as a witness." § 90.806(1), Fla. Stat. (2023). "A party may attack the credibility of any witness, including an accused, by evidence that the witness has been convicted of a crime if the crime was punishable by death or imprisonment in excess of 1 year under the law under which

4

the witness was convicted, or if the crime involved dishonesty or a false statement regardless of the punishment[.]" § 90.610(1), Fla. Stat. (2023). However, evidence admitted under these statutes must also be admissible under section 90.403's balancing test: "Relevant evidence is inadmissible if its probative value is *substantially* outweighed by the danger of unfair prejudice . . . ." § 90.403, Fla. Stat. (2023) (emphasis added).

After the officer had testified that he "asked [Caribo] if he had any of the jewelry concealed on him," defense counsel's next question, "did [Caribo] say he had jewelry?," elicited the responsive answer, "[h]e said he didn't have any jewelry on him." In the context of a trial for burglary and theft of jewelry, a defendant's statement denying possession of jewelry is self-serving and exculpatory. Presumably, defense counsel would not have asked this question if she did not think the answer would assist Caribo's defense. Having just heard the officer say he had asked Caribo a potentially incriminating question, defense counsel followed up to ensure the jury heard Caribo's exculpatory answer.

This is not an issue of first impression. The Florida Supreme Court has held that qualifying prior convictions are admissible as impeachment evidence in similar circumstances:

> Regarding Huggins' argument that evidence of his nine prior felony convictions should have been excluded under the balancing test of section 90.403, this Court must determine if the trial court abused its discretion. *See Mansfield v. State*, 758 So. 2d 636, 648 (Fla. 2000). Section 90.403 provides that relevant evidence is inadmissible if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence." The general principle behind section 90.610, Florida Statutes (2002), which permits the use of convictions for impeachment purposes under certain circumstances, supports the conclusion that the fact of Huggins' prior felony convictions had probative value regarding the credibility of the hearsay statement attributed to him. The trial court attempted to limit any danger of unfair prejudice by refraining from informing the jury of the nature of Huggins' crimes and by giving a limiting instruction regarding the jury's use of the information. On the basis of these facts, we conclude the trial court did not abuse its discretion in admitting this evidence for impeachment purposes.

5

*Huggins v. State*, 889 So. 2d 743, 756–57 (Fla. 2004), *cert. denied*, 545 U.S. 1107 (2005). *Accord Gonzalez v. State*, 948 So. 2d 877, 878 (Fla. 4th DCA 2007) ("In this case, because the defense elicited Gonzalez's own statement, intended to be exculpatory, through [another witness], the trial court did not abuse its discretion in admitting Gonzalez's past felony convictions and in giving a limiting instruction as to same.").

As in *Huggins* and *Gonzalez*, the trial court here withheld any details about the nature of Caribo's prior convictions and gave a proper limiting instruction. While the dissent emphasizes no evidence directly contradicted Caribo's statement that he "didn't have jewelry on him," that premise does not necessarily support the dissent's conclusion that the statement did not put Caribo's credibility at issue. A jury is free to accept or reject even uncontroverted testimony if it finds that the testimony lacks credibility. *See State v. P.C.L.*, 332 So. 3d 4, 9 (Fla. 4th DCA 2022); *John Caves Land Dev. Co. v. Suggs*, 352 So. 2d 44, 45 (Fla. 1977) ("[A] fact finder is not required to accept uncontroverted testimony which he does not believe.").

Caribo did not present either the trial court or this Court with a single case from any jurisdiction in which an appellate court has affirmed a trial court's exclusion of prior conviction impeachment evidence, or reversed a trial court's admission of such evidence, on balancing grounds.[3] Caribo has failed to meet his burden of demonstrating reversible error as to the trial court's providing the limited jury informational statement at issue. The responsive answer which defense counsel elicited immediately after

---

[3] The dissent references two Florida cases "to demonstrate the proper operation of section 90.806." Caribo did not cite either case on appeal or below, and neither case is apposite. In *Woods v. State*, 295 So. 3d 919 (Fla. 1st DCA 2020), the statements in question were those of Woods' co-conspirator, who had been wearing a wire, and whose remarks were only admitted to provide the context for Woods' incriminating responses. *Id.* at 920. That is not the case here. Caribo's statement was not offered to provide the "context" for anything else, but to establish a defense to the theft charge—he didn't possess the jewelry. Even less apposite is *Gudmestad v. State*, 209 So. 3d 602 (Fla. 2d DCA 2016). There, the defendant offered an insanity defense and introduced his statements about police and other people being "green aliens" and an ambulance being "alien spacecraft." *Id.* at 604–05. Certainly, these statements were not offered for their truth, as distinct from the instant case, wherein a man accused of stealing jewelry was questioned by a police officer about whether he had stolen jewelry on him and the man responded that he did not. Commentary on Caribo's demeanor when confronted was covered by the compound question's first query—"And did Mr. Caribo act, like, surprised[?]"—but defense counsel proceeded to request that the officer divulge Caribo's substantive statement as well.

6

the investigating officer had testified, "I asked him if he had any of the jewelry concealed on him," was exculpatory hearsay. A reasonable judge could have ruled, as the trial court here did, that the probative value of impeaching Caribo's credibility was not *substantially* outweighed by the danger of unfair prejudice under the circumstances. *See Huggins*, 889 So. 2d at 756–57; *Canakaris*, 382 So. 2d at 1203; *Tagner v. State*, 673 So. 2d 57, 60 (Fla. 4th DCA 1996) ("[M]ost evidence that is admitted will be prejudicial to the party against whom it is offered. Section 90.403 does not bar this evidence; it is directed at evidence which inflames the jury or appeals improperly to the jury's emotions." (quoting *State v. McClain*, 525 So. 2d 420, 422 (Fla. 1988))).

## Conclusion

The trial court properly ruled that defense counsel had "opened the door" to admission of Caribo's prior convictions for crimes of dishonesty. After consideration of that issue and all other issues raised by Caribo in his appeal, we affirm his conviction and sentence.

*Affirmed.*

SHEPHERD, J., concurs.
GROSS, J., dissents with opinion.

GROSS, J., dissenting.

It was error to admit Caribo's 23 felony convictions as impeachment, because the statement upon which the majority relies to trigger the operation of section 90.806(1), Florida Statutes (2023), was not hearsay.

Section 90.806(1) is activated "[w]hen a hearsay statement has been admitted in evidence[.]" *Id.* Section 90.801(1)(c)'s definition of hearsay requires that a statement be "offered in evidence to prove the truth of the matter asserted."

According to the majority opinion, the following exchange is what generated the State's right to impeach the defendant with his felony convictions under section 90.806(1):

> Defense attorney: And did Mr. Caribo act, like, surprised or did he say he had any jewelry?
>
> Police Sergeant: He said he didn't have any jewelry on him.

7

At sidebar, the defense attorney explained that her purpose for asking the question was to show Caribo's demeanor and cooperation with law enforcement.

Obviously, the quoted testimony was not offered for the truth of the matter asserted in the statement—that the defendant had no contraband on him at the time of his arrest. The police sergeant had already testified that he had patted Caribo down and found no jewelry, laptops, fishing rods, or cigarettes. The absence of contraband on Caribo at the time of arrest was an undisputed fact.

The defense attorney identified the non-hearsay purpose of the testimony—to show that Caribo cooperated with law enforcement. A defendant's showing that he cooperated with the police is as suggestive of "not guiltiness," as flight from the police, the subject of countless judicial opinions, is probative of culpability. As Professor Irving Younger has observed:

> The evenhandedness of justice as between subject and sovereign is a reassuring doctrine, and especially so its corollary: that, at a minimum, the law of evidence regulates the mode of proof impartially for the subject and for the sovereign. The hearsay rule that troubles the former equally vexes the latter; the exceptions to the hearsay rule that ease the latter equally comfort the former.

Irving Younger, *Sovereign Admissions: A Comment on United States v. Santos,* 43 N.Y.U. L. Rev. 108, 115 (1968).

That the defense attorney offered the quoted statement for a non-hearsay purpose means that the statement was not hearsay. If the statement was not hearsay, then section 90.806(1) impeachment does not come into play.

As Professor Ehrhardt has observed:

> When an out-of-court statement is not hearsay because it is not offered to prove the truth of the matter asserted by the declarant, the credibility of the declarant is not an issue. Therefore, the credibility of the declarant cannot be attacked and section 90.806 is not applicable.

Charles W. Ehrhardt & Terry P. Lewis, *Florida Evidence,* § 806.1 (2025 ed.).

Two Florida cases demonstrate the proper operation of section 90.806.

In *Woods v. State*, 295 So. 3d 919, 920–21 (Fla. 1st DCA 2020), an out-of-court declarant's statements were not offered "for their veracity or truth," but to "provide context" for other statements, so the court held that section 90.806 impeachment was not appropriate.

Second, in *Gudmestad v. State,* 209 So. 3d 602 (Fla. 2d DCA 2016), the defense relied upon an insanity defense. *Id.* at 604. The appellate court determined that the defendant's prior statements that the police and prosecutor were aliens were not offered for their truth, but to show that the defendant was insane. *Id.* at 605. Thus, the appellate court held that a section 90.806(1) impeachment of the defendant's statement by his prior convictions was inappropriate. *Id.* at 606. *See also United States v. Stefonek*, 179 F. 3d 1030, 1036 (7th Cir. 1999) (stating that "impeachment of an out-of-court declarant with a prior conviction . . . is inappropriate, in fact impossible, if the credibility of the out-of-court declarant is not at issue . . . which is to say if the declaration is not being placed in evidence for its truth value").[4]

Even if Caribo's out-of-court statement were hearsay, the trial court abused its discretion under section 90.403 by informing the jury of Caribo's prior convictions. The impeachment had little to no probative value because it was offered solely to impeach the credibility of a single out-of-court statement that Caribo had made regarding an undisputed fact of the case—namely, that he did not have any jewelry on him when he was detained. The majority characterizes Caribo's statement as self-serving and exculpatory, but it was merely cumulative to the sergeant's testimony. Notably, Caribo's statement was *not* a denial that he had been in the house or that he had stolen any jewelry. Therefore, any probative value of this impeachment was substantially outweighed by the risk that the jury would use Caribo's extensive record as evidence of his propensity to commit crimes.

The admission of the 23 felony convictions was hardly harmless error. This case should be reversed for a new trial.

*        *        *

***Not final until disposition of timely-filed motion for rehearing.***

---

[4] Federal Rule of Evidence 806 is similar to section 90.806, Florida Statutes.